**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

------------------------------------------------------- :
                                            :

| | | |
|---|---|---|
| **WhitServe LLC,** | : | **Civil Action No. 3:11-cv-00948-JCH** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **GoDaddy.com, Inc.,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | **June 1, 2012** |

------------------------------------------------------- :


<u>**MEMORANDUM IN SUPPORT OF GO DADDY'S**</u>
<u>**MOTION FOR PROTECTIVE ORDER**</u>

      This dispute involves GoDaddy.com, Inc.'s ("Go Daddy") concern about disclosing its source code and other highly confidential technical documents to a gentleman who has acted as a business or technology consultant to WhitServe, LLC ("WhitServe") or related entities, and has refused to confirm that he will not act as a business or technology consultant to WhitServe or related entities in the future.  Go Daddy makes this Motion pursuant to Federal Rule of Civil Procedure 26(c), Paragraph 24 of the Stipulated Protective Order entered by this Court on May 11, 2012 (Dkt. No. 118), and the Court's Order granting the parties' joint request for an extension of time (Dkt. No. 124).  Specifically, Go Daddy respectfully moves this Court for a protective order prohibiting WhitServe, LLC ("WhitServe") from disclosing Go Daddy's highly confidential information to Dr. Frederick Sayward under the Stipulated Protective Order.

As required pursuant to Federal Rule of Civil Procedure 26(c) and Paragraph 24 of the Stipulated Protective Order (Dkt. No. 118), and as set forth in the Affidavit attached as Exhibit I, the parties have met and conferred in attempt to resolve this dispute without action by the Court. Unfortunately, the parties are unable to reach an agreement and the Court's intervention is now required.

## I.   Introduction

Go Daddy has provided WhitServe with a significant amount of Go Daddy's highly confidential information.  Specifically, Go Daddy has provided en enormous number of technical development records and confidential business records, among other things.  Go Daddy will continue to provide additional highly confidential documents and records as this case progresses, including, but not limited to, detailed financial records and source code.

WhitServe has recently indicated that it intends to disclose documents labeled by Go Daddy as HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY and HIGHLY CONFIDENTIAL – SOURCE CODE to Dr. Frederick Sayward, whom WhitServe intends to rely upon as an expert in this case.  *See* Correspondence from Mr. Ferri attached as Exhibit A hereto.  Go Daddy responded, by letter dated May 17, 2012, objecting to WhitServe's disclosure of Dr. Sayward to receive Go Daddy's highly confidential information.  *See* Correspondence attached as Exhibit B.  Specifically, Go Daddy objected on grounds that it has insufficient information to fully evaluate the potential risk to Go Daddy based on the proposed disclosure of documents to Dr. Sayward.  Notably, in WhitServe's correspondence designating Dr. Sayward under the Stipulated Protective Order, it stated that Dr. Sayward has "provided consulting

services to the law firm of St. Onge, Steward, Johnston & Reens, LLC, where Wesley Whitmyer of Whitserve is a partner." *Id.*  However, the correspondence does not provide any further information about the nature or scope of that consulting relationship. *Id.*  Moreover, as part of the discovery process, WhitServe has produced an article titled *Patently, A Lawyer*, which appeared in The Connecticut Law Tribune in March 2002, and states that the St. Onge law firm hired a full-time programmer to help Mr. Whitmyer reduce his patented invention to practice. *See* Article attached as <u>Exhibit C</u>, Bates Nos. WS04828-WS04830.  Go Daddy has reason to believe that Dr. Sayward is the software programmer referenced in that article, and that transcripts from the deposition and trial testimony of Dr. Sayward in a prior case, *WhitServe, LLC v. Computer Packages, Inc.*, 3:06-cv-1935, (the "CPi Case") will demonstrate the same.

On May 23, 2012, in an attempt to resolve this issue amicably, Go Daddy requested that WhitServe provide additional information, including deposition transcripts and trial transcripts from the CPi Case.  *See* Email Correspondence attached as <u>Exhibit D</u>.  WhitServe responded raising concerns that the requested documents contain a significant amount of CPi's confidential information and cannot be disclosed under the protective order governing the CPi Case.  *See* Email Correspondence attached as <u>Exhibit E</u>.  Go Daddy promptly inquired with CPi's counsel regarding the documents in question, and ultimately obtained written authority from CPi's counsel to view certain portions of the transcripts of Dr. Sayward's deposition and trial testimony from the CPi Case.  *See* Written Authority of CPi's Counsel attached as <u>Exhibit F</u>.   In the course of those dealings with CPi's counsel, Go Daddy obtained confirmation that the requested documents contain information relevant to the present dispute.  Go Daddy specifically

requested that WhitServe provide a limited number pages from documents that Go Daddy believes are directly relevant to this issue.[1]  WhitServe refused to provide the requested portions of documents in advance of today's deadline (which was jointly requested by the parties), despite receiving written authority to do so from CPi's counsel.[2]

In a further attempt to resolve this matter amicably, Go Daddy asked WhitServe to confirm, in writing, that Dr. Sayward will not have a technology consulting relationship with WhitServe, LLC, Mr. Whitmyer, NetDocket, LLC[3] and/or the St. Onge law firm following Dr. Sayward's receipt and review of Go Daddy's highly confidential technical material.  *See* Email Correspondence attached as <u>Exhibit G</u>.  WhitServe refused to provide such confirmation. Instead, WhitServe provided a self-serving affidavit stating "To the best of my knowledge, I have never participated in the reduction to practice of the claimed technology of U.S. Patents [sic] Nos. 6,182,078 or 5,895,468," and "I have not worked for the law firm of St. Onge Steward Johnston & Reens LLC since the year 2004."  *See* Affidavit attached as <u>Exhibit H</u>.  However, we

---

[1] Specifically, Go Daddy requested that WhitServe provide (1) pages 50-84, 269-277 and related exhibits FS-2, FS-3 and FS-8 of Dr. Sayward's September 17, 2007 deposition transcript, (2) pages 296-303 and 424-427 of Dr. Sayward's October 22, 2007 deposition transcript, and (3) Dr. Sayward's trial testimony from May 20 and 24, 2010.  As stated above, WhitServe has failed to provide these transcripts.

[2] Go Daddy also propounded discovery requests and interrogatories addressing these issues on May 17, 2012.  The deadline for WhitServe's response to these discovery requests is June 21, 2012.

[3] NetDocket, LLC is a licensee of the patents-in-suit, and purports to offer a commercial embodiment of the patented invention.  NetDocket LLC is apparently owned and operated by WhitServe, LLC and/or Wesley Whitmyer, Jr.

have reason to believe that the requested deposition and trial transcripts either contradict some of the statements made in the affidavit, or contain information to indicate the Dr. Sayward was involved in another manner.

Specifically, Go Daddy has reason to believe that Dr. Sayward was involved with the design, development, or implementation of NetDocket, LLC's NetDocket system, which purports to be a commercial embodiment of the patents-in-suit, or the St. Onge law firm's Client Hub system, which was developed at least in part by Mr. Whitmyer during the relevant time periods.  Further, Go Daddy believes that Dr. Sayward has an ongoing relationship with WhitServe, Mr. Whitmyer, NetDocket, LLC and/or St. Onge that is separate from his role as an expert witness on behalf of WhitServe in other cases.

Based on currently available facts, Go Daddy objects to the disclosure of its confidential information to Dr. Sayward.  Because Dr. Sayward appears to have played an integral role in the design, development and/or implementation of one or more systems that constitute reduction-to-practice of the patented invention, or a commercial embodiment of the patented invention, he is likely a fact witness closely connected to the invention and the technology that acts as its embodiment.  Worse, given that Dr. Sayward will not confirm that he will discontinue acting as a consultant to WhitServe, Mr. Whitmyer, NetDocket, LLC and/or the St. Onge law firm regarding matters related to intellectual property docketing systems or "systems for sending professional services reminders," there is significant risk of commercial harm to Go Daddy from any disclosure of its highly confidential information.  While, Go Daddy has no reason to question the integrity of Dr. Sayward, it is unreasonable to expect that anyone working to further his own

scientific and technology interests, and those of his clients, would be able to avoid outright or even subconscious use of confidential information relevant to those interests that is revealed through discovery.

Go Daddy respectfully requests that this Court enter a protective order prohibiting WhitServe from disclosing Go Daddy's highly confidential information to Dr. Sayward, unless and until: (1) WhitServe provides a written statement indicating that Dr. Sayward will not consult with WhitServe, Mr. Whitmyer, NetDocket, LLC and/or the St. Onge law firm regarding intellectual property docketing systems, systems for sending professional services reminders, or any other technology related to the subject matter of this lawsuit, following its receipt and review of Go Daddy's highly confidential technical information; or (2) WhitServe provides the requested portions of Dr. Sayward's deposition and trial transcripts to Go Daddy so that Go Daddy can confirm the nature and scope of the past relationship between Dr. Sayward and WhitServe, Mr. Whitmyer, NetDocket, LLC and/or the St. Onge law firm, and evaluate the risk of inadvertent disclosure of Go Daddy's information.

## II.    Argument

Federal Rule 26(c) provides, in relevant part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action in pending…. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, including one or more of the following:

> (A) forbidding the disclosure or discovery; [and]
>
> …
>
> (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way….

FED. R. CIV. P. 26(c).  "Courts do not generally grant protective orders without a strong showing of 'good cause.'"  *Standard Inv. Chartered, Inc. v. National Ass'n of Securities Dealers, Inc.*, 621 F.Supp.2d 55, 61 (S.D.N.Y. 2007).  Good cause exists here.

Courts often afford fuller protection to technological information than that extended to ordinary business information.  *Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.*, 682 F.Supp. 20, 22 (D. Del. 1988) (relied upon by the United States District Court for the Western District of New York in *Tailored Lighting, Inc. v. Osram Sylvania Products, Inc.,* 236 F.R.D. 146 (W.D.N.Y. 2006)).  Courts tend to "dress technical information with a heavy cloak of judicial protection," which is due to "the threat of serious economic injury to the discloser of scientific information."  *Id.*

At issue here is not what confidential materials are to be disclosed, but rather to whom such disclosures will be made.  Go Daddy has and will produce to WhitServe its most sensitive information, including its proprietary source code and access to its high level technologists.  But WhitServe should not be permitted to provide Go Daddy's highly confidential technical documents to Dr. Sayward, without first providing documents sufficient to address Go Daddy's legitimate concerns about the potential risk of inadvertent disclosure of Go Daddy's proprietary information during the course and scope of Dr. Sayward's current and future activities.  Dr.

Sayward has and could, going forward, act as the business and technology consultant to the people who are suing Go Daddy on allegations that Go Daddy uses a competing, infringing system.  He should not also be handed Go Daddy's crown jewels.  On this point, two cases are particularly instructive.

      First, in *Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.*, the court entered a protective order prohibiting disclosure of defendant's highly confidential information to plaintiff's president as an in-house expert.  682 F.Supp. 20 (D. Del. 1988).  In *Safe Flight*, the plaintiff filed suit against the defendant for infringement of its patents covering a wind shear detection system used in airplanes.  The defendant moved for a protective order restricting the disclosure of its confidential documents to counsel and approved experts.  The plaintiff opposed the restriction, arguing that its president, a preeminent aeronautic engineer, be permitted access to the information.  The court granted the defendant's protective order, rejecting the plaintiff's request to disclose defendant's confidential information to its president as an expert.  As the court explained, even assuming the president to be a man of "great moral fiber," the court found questionable his "human ability during future years of research to separate the applications he has extrapolated from [the defendant's] documents from those he develop[ed] from his own ideas."  *Id.* at 22.  The court concluded that the risk of economic injury from even non-deliberate disclosure by an individual with scientific expertise of confidential scientific information belonging to a competitor warranted the entry of a restrictive protective order.  *Id.* at 21-23. Importantly, the court specifically noted that plaintiff failed to assure the Court or the defendant that the individual in question was willing to forego future projects or activity that would give

rise to the risk of conscious or unconscious abuse of confidential information, specifically, future research in the relevant technology. *Id.* at 22 (noting that "plaintiff has not assured the Court that Mr. Greene is willing to curtail his future research of wind shear equipment.").

Similarly, in *Tailored Lighting, Inc. v. Osram Sylvania Products, Inc.*, the court granted a protective order prohibiting disclosure of defendant's highly confidential documents to plaintiff's president and patent inventor. 236 F.R.D. 146 (W.D.N.Y. 2006). In *Tailored Lighting*, the plaintiff brought an action against defendant, Sylvania, for infringement of its patent for an automotive lamp that produces light substantially equivalent to daylight in its color temperature and color balance. The defendant moved for a protective order limiting the disclosure of certain highly sensitive technical information to counsel and outside experts. Plaintiff opposed the protective order because the proposed restriction would preclude its president, and the inventor of the patent-in-suit, from assisting counsel on technical issues related to the infringement claim. The court granted defendant's protective order, declining to allow plaintiff to share defendant's confidential information with its president and patent inventor. *Id.* at 149.

As set forth above, Go Daddy has reason to believe (and WhitServe has done little to refute) that Dr. Sayward has an ongoing relationship with WhitServe, Mr. Whitmyer, NetDocket, LLC and/or St. Onge, separate from his role as expert witness on behalf of WhitServe. Like in *Safe Flight* and *Tailored Lighting*, WhitServe's disclosure of Go Daddy's highly confidential technical documents to Dr. Sayward would present great risk of competitive injury if the proprietary information is disclosed, consciously or subconsciously, in the course of Dr. Sayward's ongoing work. *See Tailored Lighting*, 236 F.R.D. at 147 ("[u]nfettered access to

[proprietary] information by principals and employees of the requesting party puts the disclosing party at great risk of suffering a competitive injury if the proprietary information which is disclosed is used or exploited, even subconsciously, by the requesting party").[4]

WhitServe will likely attempt to distinguish the *Safe Flight* and *Tailored Lighting* cases on grounds that Dr. Sayward is merely a technology consultant and not the president of WhitServe, LLC.  However, we suspect that the relationship between Dr. Sayward and WhitServe, Mr. Whitmyer, NetDocket, LLC and/or the law firm of St. Onge is more involved than WhitServe would like us to believe.  To that end, we've specifically requested documents (even identifying a limited number of pages and exhibits) that will allow us to fully expose the nature and scope of that relationship.  WhitServe has refused to provide that information in advance of today's deadline, which was jointly requested by the parties.  It has provided no justification for its failure to do so.

Finally, Go Daddy acknowledges that the Court has already entered a detailed Stipulated

---

[4] Notably, plaintiff Tailored Lighting sought to distinguish the facts of its case from those of the *Safe Flight* case, on grounds that Tailored Lighting and Sylvania are not direct competitors.  But the court found that such a distinction did not justify a result different from that in *Safe Flight*, particularly given that Tailored Lighting licenses the patent-in-suit to Sylvania's direct competitors.  *Id*. at 149.  Specifically, the risk of competitive and economic harm exists where there is a licensing relationship between plaintiff and defendant's competitors.  The same is true here.  WhitServe has sent dozens of letters to competitors of Go Daddy alleging patent infringement and requesting that those companies license the WhitServe patents.  Given the significant cost associated with defending a patent infringement lawsuit, it is likely that many of Go Daddy's competitors will or already have taken such licenses.  Accordingly, WhitServe cannot reasonably argue that it does not compete with Go Daddy, or that there is no risk of competitive harm to Go Daddy on that basis.

Protective Order in this case (Dkt. No. 118), at the request of the parties.  To the extent an expert designated by WhitServe is an independent expert, the terms of the Stipulated Protective Order are sufficient to negate the risk of disclosure and competitive harm to Go Daddy.  However, to the extent the expert designated by WhitServe is simply another member of the team of individuals WhitServe has assembled to design, develop and implement technology systems and later exploit those systems through a licensing and litigation campaign, as we suspect is the case with Dr. Sayward, the Stipulated Protective Order is insufficient to negate the risk of inadvertent disclosure of Go Daddy's highly confidential information.  Surely, the full disclosure of facts should be ordered before Go Daddy delivers its source code to Dr. Sayward.

## III.    Conclusion

Go Daddy respectfully requests that this Court enter a protective order prohibiting WhitServe from disclosing Go Daddy's highly confidential information, including source code, to Dr. Sayward, unless and until: (1) WhitServe provides a written statement indicating that Dr. Sayward will not consult with WhitServe, Mr. Whitmyer, NetDocket, LLC and/or the St. Onge law firm regarding intellectual property docketing systems, systems for sending professional services reminders, or any other technology related to the subject matter of this lawsuit following its receipt and review of Go Daddy's highly confidential technical information; or (2) WhitServe provides the requested portions of Dr. Sayward's deposition and trial transcripts to Go Daddy so that Go Daddy can evaluate the nature and scope of the past relationship between Dr. Sayward and WhitServe, Mr. Whitmyer, NetDocket, LLC and/or the St. Onge law firm, and fully evaluate the risk of inadvertent disclosure of Go Daddy's information.

Date: June 1, 2012

**DEFENDANT GODADDY.COM, INC.**

By   /s/ Ka Fei Wong
Elizabeth J. Stewart  (ct01316)
Murtha Cullina LLP
Whitney Grove Square
Two Whitney Avenue, 4th Floor
New Haven, CT 06510
Telephone:  203-772-7700
Facsimile:  203-772-7723
Email: estewart@murthalaw.com

Brian W. LaCorte (phv04864)
Donna H. Catalfio (phv04865)
Andrea L. Stone (phv04866)
Ballard Spahr LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004
Telephone:  602.798.5449
Facsimile:  602.798.5595
Email:  lacorteb@ballardspahr.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2012, a true and correct copy of the foregoing

Memorandum of Law in Support of the Motion for Protective Order was filed electronically and

served by U.S. first-class mail on anyone unable to accept electronic filing. Notice of this filing

will be sent by e-mail to all parties by operation of the Court's electronic filing system or by U.S.

first-class mail to anyone unable to accept electronic filing. Parties may access this filing through

the Court's system.

_____/s/ Ka Fei Wong_____
Ka Fei Wong (ct28130)