## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

-------------------------------------------------------- :
                                :

| | | |
|---|---|---|
| WhitServe LLC, | : | Civil Action No. 3:11-cv-00948-JCH |
| | : | |
|       Plaintiff, | : | |
| | : | |
| v. | : | **December 17, 2012** |
| | : | |
| GoDaddy.com, Inc. | : | **PORTIONS REDACTED** |
| | : | **PURSUANT TO PROTECTIVE** |
|       Defendants. | : | **ORDER** |
| | : | |

-------------------------------------------------------- :

## MEMORANDUM IN SUPPORT OF GO DADDY'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY

## I.      INTRODUCTION

The fundamental problem in this case is this:  Wesley Whitmyer, Jr. invented nothing.

Mr. Whitmyer observed the cliché notion of automating law office procedures to cut down on

paper amidst the 1990s Internet boom.  A patent lawyer by training, Mr. Whitmyer deftly

shepherded incredibly broad claims through the Patent Office for an automated reminder system

that looked remarkably similar to longstanding manual reminder steps and even existing law firm

docketing programs.  Meanwhile, he reneged on his deal with the U.S. Government for a patent

monopoly by failing to make a commensurate technical disclosure in his applications, and by

drafting inscrutable claims.  Now, over a decade later, Mr. Whitmyer, through what is essentially

an alter-ego, WhitServe LLC ("WhitServe"), stretches his automated legal docket reminder

claims to read on what would appear to be a totally unrelated domain name renewal process.

But WhitServe's overreaching has consequences.  First, WhitServe's Internet-automated

renewal idea is preemptively broad and not patentable for being directed to an ineligible abstract

idea-- reminding people about deadlines and asking them for their instruction on what to do in

relation thereto.  A Federal Circuit appellate judge has even said so.  Indeed the concept is as

plain as the adages of our time, "Don't forget to pick up milk" or "better meet a legal deadline or

suffer the consequences."  The inventor of Post-It Notes did not obtain a monopoly over the idea

of writing reminders down on a piece of paper.  So too here.  Mr. Whitmyer cannot claim an

invention over reminding clients about deadlines in order to timely receive a client response

about the matter at issue in the reminder-- the concept is as old as the practice of law.

Second, WhitServe's attempt to read its claims on GoDaddy.com, Inc.'s ("Go Daddy")

domain renewal process fails because Network Solutions, Inc., one of the first domain registrars,

was using a "Message Ticketing System" in nearly the exact same way back in 1993.  Other

automated, Internet-based systems were also already publicly known, such as those for renewing

library books by email and automating a college applications process.  Of course, none of this prior art was before the Patent Office during prosecution or in a recent reexamination proceeding, nor was any of it raised during WhitServe's past litigation involving the same patents.

In hopes to swear behind this never-before presented, invalidating prior art, WhitServe now offers a moving target for the date Mr. Whitmyer purportedly conceived the asserted inventions in the WhitServe Patents.[1]  This too fails because the bare testimony of a financially motivated inventor does not entitle him to an earlier priority date under our patent laws.  In sum, the WhitServe Patents are invalid.

## II.    LEGAL STANDARDS

### A.    Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A genuine dispute of material fact exists only when the evidence, viewed in a light most favorable to the nonmoving party, is such that a reasonable jury could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).[2]  In this Motion, Go Daddy has the initial burden of showing there is no genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Upon such a showing, the burden shifts to WhitServe to set forth specific facts showing a genuine issue to be resolved at trial. *See Anderson*, 477 U.S. at 245, 252.  WhitServe must establish more than "[t]he mere existence of a

---

[1] The "WhitServe Patents" as used herein refer to the patents asserted by WhitServe in this case, U.S. Patent Nos. 5,895,468 and 6,182,078.

[2] Unless otherwise noted, all internal citations and quotations are omitted in this brief for brevity.

scintilla of evidence" in support of its position, *Anderson*, 477 U.S. at 252, and cannot simply

rely on allegations or conclusory statements. *Morris v. Lindau*, 196 F.3d 102, 109 (2d Cir.

1999). Rather, WhitServe must present specific facts that would enable a reasonable jury to find

in its favor. *Waltros v. Town of Preston*, No. 3:10-cv-597, 2012 WL 4512534, at *2 (D. Conn.

Sept. 29 2012) (Hall, J.).

### B.    Patent Invalidity

A party seeking to invalidate a patent claim on summary judgment must do so by clear

and convincing evidence. 35 U.S.C. § 282 (2012); *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424

F.3d 1374, 1378 (Fed. Cir. 2005) (internal citations omitted). However, no added burden of

deference is due to the Patent Office where the asserted prior art was not previously considered

by the Patent Office. *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2251 (2011) ("Simply

put, if the PTO did not have all material facts before it, its considered judgment may lose

significant force. … And, concomitantly, the challenger's burden to persuade the jury of its

invalidity defense by clear and convincing evidence may be easier to sustain."); *Tokai Corp. v.*

*Easton Enters., Inc.*, 632 F.3d 1358, 1367 (Fed. Cir. 2011).

## III.    ARGUMENT

### A.    <u>Mr. Whitmyer Cannot Swear Behind The October 1996 Filing Date Of The '468 Patent Because There Is No Evidence Corroborating Mr. Whitmyer's Alleged Conception Date.</u>

No evidence corroborates Mr. Whitmyer's self-serving, *ipse dixit* testimony that he

conceived his alleged invention in "late 1993 to early 1994." Even Mr. Whitmyer admits that

"no written proof" exists corroborating his conception. In an attempted work around, WhitServe

equivocates by refusing to pinpoint a specific conception date until the need arises from Go

Daddy's assertion of its prior art--that is truly WhitServe's position in a recent interrogatory

response (discussed more fully below). Aside from being disingenuous, WhitServe's

"conception-eering" will no doubt confuse the jury.  Further, since there is no dispute that the alleged invention was not *actually* reduced to practice until well over a decade after Mr. Whitmyer filed his first patent application, any evidence of Mr. Whitmyer's first baby steps toward his alleged invention cannot prove that he formed a definite and permanent idea of the *complete and operative* invention before October 1996.  Thus, this is the exact case for which the corroboration rule was designed to protect—a financially incentivized inventor trying to avoid the invalidation of his patents.

> **1.      The Law Requires Corroborating Evidence Showing A Definite And Permanent Idea Of A Complete And Operative Invention To Prove A Prior Conception Date.**

Conception is a question of law.  *Price v. Symsek*, 988 F.2d 1187, 1190 (Fed. Cir. 1993). The test for conception is whether a definite and permanent idea of the complete and operative invention has been formed in the mind of the inventor.  *Stamps.com Inc. v. Endicia, Inc.*, 437 F. App'x 897, 907 (Fed. Cir. 2011) (citing binding precedent in affirming finding of no genuine issue of material fact regarding conception where report proffered for corroboration contained only "opaque and incomprehensible references" to online postage purchasing feature).  The idea must be so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation.  *Id.*  "An idea is definite and permanent when the inventor has a specific, settled idea, a particular *solution* to the problem at hand, not just a general goal or research plan he hopes to pursue."  *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994).  To antedate (i.e. "swear behind") a prior art reference, an inventor claiming prior conception has the burden to produce evidence corroborating the inventor's testimony.  *Id.* at 908.  A "rule of reason" analysis is applied to determine whether the inventor's prior conception testimony has been corroborated. *Price*, 988 F.2d at 1195.  The corroboration requirement arose out of a concern that inventors

testifying in patent infringement cases are tempted to remember facts favorable to their case by the lure of protecting their patent for their own financial or personal gain.  *See id.*; *see also Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 776 (Fed. Cir. 1995).

**2.**     **No document, alone or combined, shows all the elements of the alleged invention prior to the filing date of the WhitServe Patents.**

Evidence corroborating conception must encompass all limitations of the claimed invention.  *Brown v. Barbacid*, 276 F.3d 1327, 1336 (Fed. Cir. 2002) (affirming no prior conception where patentee's laboratory notebook and autoradiograph records showed that his earlier experiments did not include the use of a particular substrate that was a limitation of the claim, and the only independent testimony corroborating these earlier experiments did not suggest that the experiment relied upon included that substrate); *Slip Track Sys., Inc. v. Metal-Lite, Inc.*, 304 F.3d 1256, 1263 (Fed. Cir. 2002) ("Conception must include every feature or limitation of the claimed invention.").

Here, there are no documents before October 7, 1996 that contain every limitation of the WhitServe Patents, whether those documents are considered alone or combined.  Mr. Whitmyer stated that he is the only person in possession of corroborating evidence, yet he admits that he cannot pinpoint a conception date and that he has no single record of conception in 1993 or 1994-- no laboratory notebook, no drawings, no flow charts, no email reports, no invention disclosure, no memoranda.  (SOF ¶ 9.)  Further, Mr. Whitmyer confirmed in his deposition that none of the documents cited by WhitServe in response to Go Daddy's corroboration discovery request contained a complete description of the WhitServe Patent claims.  (*See, e.g.*, SOF ¶¶ 9, 11, 20, 22 (stating "it's incomplete of course, because this two and a half page letter can't possibly include all of the steps and details required" and that they do not show "a complete and operative invention" or "disclose[] all of the elements .... It's lacking detail.").)

This is not the first time Mr. Whitmyer has admitted that his alleged conception date of 1993-1994 is uncorroborated.  Mr. Whitmyer has testified on at least two prior occasions that he has no documentation corroborating his alleged 1993-1994 conception, including during the *CPi* trial:

> 12    Q   Do you remember, Mr. Whitmyer, when you sued
> 13    the company CPA, Computer Patent Annuities, that you
> 14    stated under oath that you had no written evidence to
> 15    prove conception?
> 16     A   I think that's probably true, I cannot tell
> 17    you with a piece of paper when, I didn't write down I
> 18    thought of the invention on this day and signed it or
> 19    anything like that.
> 20    Q   So you don't have any proof of it?
> 21     A   I have no written proof, that's correct.

(SOF ¶ 23 (confirming same in this case).)  WhitServe's technical expert, Dr. Sayward, has also confirmed that he has not seen any corroborating evidence, despite having worked with Mr. Whitmyer on a later version of the SSJR network that WhitServe now points to for corroboration.  (SOF ¶ 24.)

### 3.   WhitServe's Alleged Corroborating Documents At Best Show Mr. Whitmyer Identified The Problem To Be Solved Of The WhitServe Patents And Not Their Claimed Solution.

Simply recognizing the problem that the invention ultimately solves and working with prior art systems prior to forming a complete and operative idea of the inventive solution does not corroborate conception.  *Singh v. Brake*, 317 F.3d 1334, 1340-41 (Fed. Cir. 2003); *Gemstar-TV Guide Int'l, Inc. v. Int'l Trade Comm'n*, 383 F.3d 1352, 1382-83 (Fed. Cir. 2004) (finding product disclosures failed to corroborate inventor's specific contributions in excess of the prior art and that the inventor's own testimony could not fill in the ambiguous gaps).

Throughout his deposition, Mr. Whitmyer incorrectly equated documents that hinted at his identification of the problem to be solved with evidence corroborating the complete and

operative formation of the WhitServe Patents' solution.  (SOF ¶¶ 9, 15-22.)  Mr. Whitmyer

admitted that the only reason he thinks that he "conceived" the WhitServe Patents' alleged

invention in 1993-1994 is because that is when he first began to "concentrate" on tackling the

"piles of tractor feed paper" problem while working as part-time in-house patent counsel at OSi.

(SOF ¶ 10.)  The only documents that WhitServe cites for the 1993-1994 timeframe shows no

more than this "concentrating," "focusing," and "recognizing the inefficiency" of the OSi paper

problem.  (SOF ¶ 12.)  Even if true, this banal notion of identifying the need to automate a paper-

based task does not clearly, definitely, and permanently corroborate the conception of a

completely operative, Internet-based renewal reminder system.  *Burroughs Wellcome*, 40 F.3d at

1228 ("An idea is definite and permanent when the inventor has a specific, settled idea, a

particular *solution* to the problem at hand, not just a general goal or research plan he hopes to

pursue.") (emphasis added).

　　　　When shown the documents that WhitServe cited in its interrogatory response to a

request seeking evidence of corroboration, Mr. Whitmyer insisted they evidenced corroboration

but ultimately confirmed that they were only piecemeal "steps toward" reduction to practice.

(*See, e.g.*, SOF ¶¶ 10-11, 22 (arguing that PerfectLaw "mail merge program" used to auto-

generate a bill from querying a database corroborated conception and stating "You know, I think

there's many, many, many steps necessary in order to reduce to practice the invention claimed in

the patents, and you have to – you have to crawl before you can walk, and you have to walk

before you can run.  And I think that the step used to generate this bill is a step that is used in an

implementation of the '468 WhitServe patent."); *id.* (confirming the document did not contain all

the elements of the WhitServe Patents); *id.* ("It's a step along the path. You can't just do it all at

once. You can't snap your fingers, and have a website, and have e-mail and have all of this other

stuff. You can't do it.  It's a very long and complicated process.").  WhitServe's faulty logic of showing conception through "first steps" of reduction to practice is like someone trying to prove she invented the automobile by showing she built everything but the engine.  It defies further logic that these initial steps evidence complete conception when, in fact, it took Mr. Whitmyer well over another decade to actually complete his reduction to practice.  (SOF ¶¶ 26-27.)

Indeed, the only partner at the St. Onge law firm at the time with a computer background, Mr. Reens, implicitly acknowledged through a memorandum to the firm that many of Mr. Whitmyer's alleged "steps toward reduction to practice" were nothing more than features of a prior art legal docketing system called "PerfectLaw."  (SOF ¶ 16 (Whitmyer stating he did not correct Mr. Reen's failure to give him credit for his invention in the memo), *id.* at 276:11-277:1 (despite claiming the EDSI installation proposal as enabling the "subjects of" his invention, Mr. Whitmyer did not disclose it to the PTO as evidencing his invention)].)  Despite detailing the proposed technology to be installed at the firm, Mr. Reen made no mention of Mr. Whitmyer's alleged invention, nor did Mr. Whitmyer feel the need to rectify the omission at the time.  (*Id.*)  Moreover, Mr. Whitmyer does not contend that the 1993-1994 SSJR network practiced all of his claim limitations, so WhitServe's citation to this evidence as corroborating Mr. Whitmyer's conception again misses the mark.  *See Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1295-96 (Fed. Cir. 2008) (affirming insufficiency of corroborating evidence where evidence of a DayTimer entry from an inventor merely showed that a conversation about the state of the art occurred but did not provide corroborating evidence of any details of the alleged conception).  Mr. Whitmyer's testimony, standing alone, cannot be used to string together such disparate, tidbits of information already in the prior art to evidence conception.  *See Gemstar-TV Guide*, 383 F.3d at 1382-83.

4. **The High Level of Mr. Whitmyer's Self-Interest In This Case Requires Correspondingly Strong Corroboration.**

The need for corroboration is at its peak where, as here, there is a "concern that a party claiming inventorship might be tempted to describe his actions in an unjustifiably self-serving manner in order to … maintain an existing patent." *Singh*, 317 F.3d at 1340-41. Mr. Whitmyer is the sole inventor named in the WhitServe Patents, an owner of WhitServe, an owner of NetDocket, and a partner in the law firm disqualified for its conflict of interest in this case. (SOF ¶¶ 1-2.) This blatant self-interest, juxtaposed with literally zero corroborating evidence, requires barring WhitServe from swearing behind the October 7, 1996 filing date of the WhitServe Patents.

B. **The WhitServe Patents Are Invalid As Patent Ineligible, Indefinite, Anticipated, And Obvious.**

Wesley Whitmyer did not invent legal docketing reminder systems. He did not invent computers. He did not invent the Internet. If he did anything at all, Mr. Whitmyer was the first to pass a business method through the Patent Office consisting of the basic idea of applying modern Internet computer technology to legal docket reminder systems. Unfortunately, patentable subject matter jurisprudence had not caught up with the late '90s Internet boom during which Mr. Whitmyer (a patent lawyer himself) obtained overbroad patents. Now, more than a decade later, Mr. Whitymer seeks to monopolize the entire concept of automatic Internet reminders across all industries, including domain name registrars, such as Go Daddy, that have nothing to do with the automated patent annuity reminders that Mr. Whitmyer originally had in mind. But none of his ideas were new. The idea for emailing links to renew library books and online domain name renewals were already known to the public by the time Mr. Whitmyer got around to filing his patent applications. Because Mr. Whitmyer contributed nothing to the public

by way of his alleged inventions, he did not uphold his end of the bargain for obtaining a patent. His patents are invalid.

> **1.    THE WHITSERVE PATENTS ARE INVALID AS CLAIMING THE PATENT-INELIGIBLE ABSTRACT IDEA OF AUTOMATED RENEWAL REMINDERS**

The WhitServe Patents claim the computer automation of a routine activity in which professionals have engaged for decades: providing people with reminders of deadlines and receiving responses relating to those deadlines.  Indeed, at least one Federal Circuit judge has already concluded that the WhitServe Patents are "plainly invalid" as "barred at the threshold by § 101 … because they are directed to the abstract idea that it is useful to provide people with reminders of approaching due dates and deadlines."  *WhitServe, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 39, 41-42 (Fed. Cir. 2012) (Mayer, J., dissenting) ("*CPi*").[3]  The opinion is well founded:  the WhitServe Patents attempt to preempt the basic and abstract concept of minding deadlines-- of reminding another about a deadline through some type of communication over the Internet.  This is evidenced by WhitServe's scorched earth, industry-wide enforcement campaign reaching all domain registrars and other long-standing, innovative technology giants like Apple and Amazon.  What is worse, Mr. Whitmyer contributed no technical advance by way of his generic computer and Internet disclosures in the Whitserve Patents.

> **a.    Patent Eligibility Under Section 101**

Not every idea is eligible for a patent.  Congress limited patent-eligible subject matter to a "process, machine, manufacture, or composition of matter."  35 U.S.C. § 101.  The Supreme

---

[3] In *CPi*, both parties raised a number of issues on appeal to the Federal Circuit, none of which included subject matter patentability under 35 U.S.C. § 101.  *CPi*, 694 F.3d at 18.  Thus, the majority did not address the issue of the WhitServe Patents' validity under § 101.  However, the Honorable Haldane Robert Mayer issued a very strong dissenting opinion in which he concluded, *sua sponte*, that the WhitServe Patents are invalid for failing to meet Section 101's eligibility requirements.  *Id.* at 39-42.

Court has determined that subject matter eligibility is the threshold question for patent validity, performing a "screening function" to guard against the patent ineligible categories of "laws of nature, physical phenomena, and abstract ideas." *Mayo Collaborative Servs. v. Prometheus Labs.*, 132 S.Ct. 1289, 1303-04 (2012); *Bilski v. Kappos*, 130 S. Ct. 3218, 3225 (2010) ("*Bilski II*"). These categories are excluded from patent eligibility because "they are the basic tools of scientific and technological work," which are "free to all men and reserved exclusively to none." *Mayo*, 132 S. Ct. at 1293. Whether a patent claims statutory subject matter is purely a question of law and is properly resolved on summary judgment even prior to construing any claims. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1369 (Fed. Cir. 2011); *Bancorp Servs., L.L.C. v. Sun Life Asurance Co. of Can.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) (stating "claim construction is not an inviolable prerequisite to a validity determination under § 101").

> **b.      The WhitServe Patents preempt the patent ineligible abstract idea of automatically reminding people of deadlines and processing responses over the Internet.**

Patent claims that effectively preempt the use of an abstract idea or fundamental business concept by "disproportionately tying up the use of the underlying [abstract idea]" are invalid under § 101. *Mayo*, 132 S. Ct. at 1294 (emphasis added). Such preemptive claims breach the "carefully crafted bargain" between an inventor and the Government because the inventor "seeks broad monopoly rights over a basic concept, fundamental principle, or natural law without a concomitant contribution to the existing body of scientific and technological knowledge." *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 683 F.3d 1300, 1324 (Fed. Cir. 2012).

Here, the WhitServe Patents improperly preempt the fundamental business concept of automatically sending reminders for due dates and soliciting responses via forms over the Internet. In dissecting the claims element-by-element, this abstract idea leaps out. (See 101 Chart, Exhibit II.) Whitmyer's independent claims in their simplest form comprise the following

basic concepts: (A) a computer-aided, (B) collection of reminder information, (C) gathering reminder information by deadline, (D) generating forms related to the deadlines, and (E)-(F) exchanging the forms and responses thereto through the Internet or a website.  Claim 1 is representative:

| Element | Abstract Idea | '468 Claim 1 |
|---------|---------------|--------------|
| A1 | A computer-aided[4] service. | A device for automatically delivering professional services to a client comprising: |
| A2 | A computer. | a computer; |
| B | Collection of reminder information. | a database containing a plurality of client reminders, each of the client reminders comprising a date field having a value attributed thereto; |
| C | Data-gathering by deadline. | software executing on said computer for automatically querying said database by the values attributed to each client reminder date field to retrieve a client reminder; |
| D | Creating forms based on the deadline. | software executing on said computer for automatically generating a client response form based on the retrieved client reminder; |
| E1 | Internet (or website) connection. | a communication link between said computer and the Internet; |
| E2 | Sending forms through the Internet (or website). | software executing on said computer for automatically transmitting the client response form to the client through said communication link; and |
| F | receiving a reply through the Internet (or through a website). | software executing on said computer for automatically receiving a reply to the response form from the client through said communication link. |

(101 Chart, Ex. _.)  Consistent with this abstraction, WhitServe asserts that its patent claims "should be afforded the full range of their plain and ordinary meanings" and apply to the reminder of any deadline or "appointment" for "any service."  (SOF ¶¶ 72-84.)

Meanwhile, when securing his patent monopoly over this basic concept, Mr. Whitmyer failed to contribute a concomitant technological advancement to society.  The patents' written

---

[4] Computer-automated terms are underlined.

disclosure only employs the reminder idea in the limited context of automating prior art "docketing systems" used by "attorneys and other professionals."  (SOF ¶¶ 39-51.)  The patents acknowledge that traditional "docketing systems" already disclosed the basic concepts of periodically examining a calendar for deadlines, sending reminders based on the deadlines, exchanging communications (such as response forms and confirmations) with the reminded clients, and updating the system to reflect these actions.  (*Id.*)  Rather, the "object" of Mr. Whitmyer's alleged invention was to improve the efficiency of the docket reminder concepts by automating them through "modern communication media, such as the Internet."  (*Id.*)

Aside from that, Mr. Whitmyer gave no technical details in his patents.  Mr. Whitmyer, who is a patent lawyer and not an engineer, admits that he did not invent the Internet, computers, email, or sending documents or hyperlinks through them.  (SOF ¶¶ 30-37.)  Nor did he disclose any specific software algorithms or hardware configurations in his patents that might have added to society's technical knowledge.  (SOF ¶¶ 39-51.)  Indeed, Mr. Whitmyer did not even reduce his invention to practice until over a decade after filing for his patents, and even then he had to contract out the actual engineering.  (SOF ¶¶ 26-27.)  Without more, the idea of automating a routine activity engaged in by professionals for decades is simply not eligible for a patent.  *See CPi*, 694 F.3d at 40 ("Because the WhitServe patents simply describe a basic and widely-understood concept—that it is useful to provide people with reminders of important due dates and deadlines—and then apply that concept using conventional computer technology and the Internet, they fail to meet section 101's subject matter eligibility requirements.").

Having contributed nothing himself, Mr. Whitmyer (through his alter ego, WhitServe) has not been shy about capitalizing off of others' technical success.  To this preemptive end, WhitServe has asserted infringement in nearly every industry that uses a computer to send a due

date reminder to a customer over the Internet and receive a response.  This is evidenced by the over 25 infringement demand letters that WhitServe has issued to companies in industries other than the legal profession—including Go Daddy.  (SOF ¶ 84.).  Oddly, it appears that WhitServe has taken the exact opposite approach of trying to circumvent § 101 by limiting its claimed reminder idea to legal docketing systems, instead obliterating any "field of use" restriction on its patents.  *Cf. Bilski II*, 130 S. Ct. at 3231 ("limiting an abstract idea to one field of use or adding token postsolution components d[oes] not make the concept patentable").  WhitServe's overreaching is a classic realization of the risk that § 101 is designed to filter out—"disproportionately tying up" the basic concept of reminding people to renew a product or service through the Internet.  *Mayo*, 132 S. Ct. at 1294.

> **c.     The WhitServe Patents' Generic Computer Hardware and Software Limitations Fail to Render the Otherwise Abstract Idea Patentable Under the Machine-or-Transformation Test.**

In determining whether a patent claim fails Section 101 as an abstract idea, the Federal Circuit has applied the so-called "machine-or-transformation test," where a claimed invention is patent-eligible if: "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing."  *Bilski II*, 130 S. Ct. at 3224.  While not the sole test for patentable subject matter, the Supreme Court recently confirmed that the test is an "important and useful clue" and "investigative tool" for determining whether an invention is patent-eligible under § 101.  *Id.* at 3226-27.

> **i.     Claims to computer-automation of an abstract idea are not patent eligible.**

The Federal Circuit has repeatedly ruled that claims to computer-automation of an otherwise patent ineligible idea fail to tie the invention to a "particular machine" where the claimed automation is merely through a generic computer running unspecified software or over

the Internet.  *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1331-34 (Fed. Cir. 2012); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370-71, 1375-76 (Fed. Cir. 2011); *Bancorp Servs., L.L.C. v. Sun Life Assurance Co.*, 687 F.3d 1266, 1275-81 (Fed. Cir. 2012) (affirming summary judgment of invalidity under § 101 where "the claims merely employ computers to track, reconcile, and administer a life insurance policy with a stable value component—*i.e.*, the computer simply performs more efficiently what could otherwise be accomplished manually"). Such generic computer and software limitations do not place the "meaningful limits on the claim's scope" required for patent eligibility.  *CyberSource*, 654 F.3d at 1375; *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1333 (Fed. Cir. 2010) ("In order for the addition of a machine to impose a meaningful limit on the scope of a claim, it must play a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly."); *CPi*, 694 F.3d at 40 ("While running a particular process on a computer undeniably improves efficiency and accuracy, cloaking an otherwise abstract idea in the guise of a computer-implemented claim is insufficient to bring it within section 101.").

   *CyberSource* and *Dealertrack* are analogous to the case at bar.  In *CyberSource*, the Federal Circuit considered claims for "a method for verifying the validity of a credit card transaction over the Internet" by mapping Internet Protocol or email addresses to the credit card used in a given online transaction.  654 F.3d at 1368, 1370.  The claims were not limited to "any specific fraud detection formula or mathematical algorithm, but rather broadly purport[ed] to encompass *any* means of utilizing the map of credit card numbers to determine if the credit card transaction is valid."  *Id.* at 1370.  The court affirmed summary judgment of invalidity under § 101.  *Id.* at 1376.  The court rejected the patentee's argument that the claim was "tied to a

particular machine because it would not be necessary or possible without the Internet." *Id.* at 1370. The court also rejected the patentee's argument that a claim's bare recitation of "computer readable medium" saved the claim from ineligibility simply because it required generic "software instructions that can only be executed by 'one or more processors of a computer system.'" *Id.* at 1376 ("Here, the incidental use of a computer to perform the mental process … does not impose a sufficiently meaningful limit on the claim's scope. … [T]he basic character of a process claim drawn to an abstract idea is not changed by claiming only its performance by computers, or by claiming the process embodied in program instructions on a computer readable medium.").

In a similar vein, the Federal Circuit in *Dealertrack* addressed the eligibility of claims directed to "a computer-aided method and system, respectively, for processing credit applications over electronic networks." 674 F.3d at 1317. In prior art systems, car dealers would apply for their customers' credit to banks by filling out "application forms," "faxing or transmitting" the forms to the banks, and then receiving a bank's response after the bank had processed the forms' information in their own computer systems. *Id.* The attempted invention "proposed to automate th[is] process through the use of a 'central processor,' which receives credit application data from dealers, processes the data to conform to the individual application forms of different banks, forwards the completed applications to banks selected by the dealer, receives answers from the banks, and forwards those answers back to the dealer." *Id.* (emphasis added). The accused products simply provided "loan management services that pass all communications between dealers and lenders through the Internet." *Id.* at 1318.

The Federal Circuit affirmed the district court's summary judgment of invalidity under § 101, where "the district court determined that because the computer implicated was not

'specially programmed' and 'nothing more than a general purpose computer that has been programmed in some unspecified manner,' it could not constitute [a] 'particular machine.'" *Id.* at 1332, 1334.  The Federal Circuit found that the claim at issue described a patent-ineligible abstract idea because it "explain[s] the basic concept of processing information through a clearinghouse," "wholly preempt[s] the clearinghouse concept," and "cover a clearinghouse process using any existing or future-devised machinery."  *Id.* at 1333-34.  The court reasoned that the "computer-aided" limitation was not meaningful because the patent "does not specify how the computer hardware and database are specially programmed to perform the steps claimed in the patent."  *Id.* at 1333.

        ii.      <u>The non-specific and generic computer, software, and databases in the disclosure and claims of the WhitServe Patents fail to meaningfully limit the abstract idea of renewal reminders.</u>

In the present case, the WhitServe Patents merely claim the renewal reminders concept automated through generic computer hardware and software in an unspecified manner over the Internet.  Nowhere in the WhitServe Patents' claims, written description, or drawings is any specific type of hardware or software disclosed.  (SOF ¶¶ 39-51.)  The most broad, over-reaching example deserves emphasis.  It can be found in the first independent claim of the '078 Patent.  There, WhitServe truly claims as an invention the online communication of a person's account status, e.g., noting an expiration of an online account with a date listed on the account status page.  How on earth can this be patentable?  The question answers itself.

As in *Dealertrack*, where the court invalidated claims to "nothing more than a general purpose computer that has been programmed in some unspecified manner," WhitServe's claims over generic "software executing on a [professional or client] computer" fail the machine-or-transformation test.  *Dealertrack*, 674 F.3d at 1334.  And, like the *CyberSource* patent's failure

to disclose any specific "fraud detection formula or mathematical algorithm," the WhitServe Patents' cryptic software-related references to generic "scripts" with no code or algorithms fail to meaningfully limit the claims.  654 F.3d at 1370.  Such generic claims to hardware and software unduly risk preempting their automated concepts by covering "any existing or future-devised machinery."  *Dealertrack*, 674 F.3d at 1334.

And that Mr. Whitmyer simply automated the process of docketed reminder forms and renewals "over the Internet" likewise fails to save the claims from ineligibility.  The *CyberSource* claims for verifying credit card transactions online were not saved just because the invention "would not be necessary or possible without the Internet."  654 F.3d at 1370.  Nor were the *Dealertrack* claims patent-eligible despite purporting to automate the exchange of credit application forms through a "central processor" where "pass[ing] all communications … through the Internet" allegedly read on the claims.  674 F.3d at 1318.  Mr. Whitmyer admits he did not invent the Internet, email, or passing forms or hyperlinks through either of them.  (SOF ¶ ¶ 30-38.)  His utter failure to disclose anything in his patents other than generically applying this well-known technology fails to demonstrate the "inventive concept" required for patent-eligibility.  *Mayo*, 132 S. Ct. at 1294 ("[O]ne must do more than simply state the [fundamental concept] while adding the words 'apply it.'").

### d.       The dependent claims merely add post-solution limitations that likewise do not salvage the WhitServe Patents as patentable.

The asserted dependent claims of the WhitServe Patents merely tweak the abstract idea of the independent claims without adding any meaningful limitations.  The asserted '468 patent dependent claims tack on the ideas of using the Internet or a website to send notice of a response, creating additional response forms based on a reply, sending forms to a third party, sending confirmations, and updating databases based on the exchanged forms.  (101 Chart, Ex. II.)  The

asserted '078 dependent claims simply reiterate that an email can be used to send a renewal

notice or a form.  (*Id.*)  These are "token postsolution components" that fail to render the

otherwise abstract idea of their correspondeing independent claims patent-eligible.  *Bilski II*, 130

S. Ct. at 3231.

## 2.      THE WHITSERVE PATENTS ARE INVALID UNDER 35 U.S.C. § 112

### a.      Enablement, Written Description, and Definiteness

The first paragraph of Section 112 has two requirements: enablement and written

description.  *See* 35 U.S.C. § 112, ¶ 1.  Enablement requires that a patent specification must

describe to one skilled in the art how to make and use the invention as of the filing date.  "[A]

written description of the invention" requires "full, clear, concise, and exact terms."  *Id.*  To

satisfy the written description requirement, the specification must describe each and every

limitation of a patent claim in sufficient detail so that a person of ordinary skill in the art would

conclude that the inventor actually possessed the full scope of the claimed subject matter at the

time of filing.  *See Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010).

The second paragraph of Section 112 is the definiteness requirement.  *See* 35 U.S.C. §

112, ¶ 2.  Definiteness requires that the claims must particularly point out and distinctly define

the metes and bounds of the subject matter that will be protected by the patent.  *See Ultimax

Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1352 (Fed. Cir. 2009).

Enablement and definiteness are questions of law.  *See In reVaeck*, 947 F.2d 488, 495

(Fed. Cir. 1991); *Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1363 (Fed. Cir.

2012).  Compliance with the written description requirement is a question of fact.  *See Enzo

Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 962 (Fed. Cir. 2002).

As admitted by the inventor himself, there are numerous claim terms that do not have clear "ordinary" meanings and that the specification does not describe in any detail to assist of one of ordinary skill in the art on how to make and use the invention, and thus are indefinite as a matter of law.  (SOF ¶¶ 52-55.)  Specifically, these claim terms include "client reminder(s)," "date field having a value attributed thereto," "values attributed to each client reminder date field," "client response form," and "form."  (*Id.*)

In particular, the phrase "querying by values attributed to each client reminder date field" is recited in Claims 1, 5, 9, and 24 of the '468 Patent and Claims 1, 4, 7, and 9 of the '078 Patent and incorporated in each of the claims depending therefrom.  A "database query" is basically a question that you ask the database.  (*Id.*)The result of the query is the information that is returned by the database management system.  (*Id.*)  Queries are usually constructed using SQL (structured query language) which is a high-level programming language.  (*Id.*)  The term "query" means to search, to question, or to find.  (*Id.*)  When you query a database, you are searching for information in the database by a search term or terms.  (*Id.*)  As an illustrative example, if one were to query the below data table by "John," then two data entries would be returned.  In this example, "John" is the search term, or in other words, the "query by" term. Accordingly, the character string "John" is compared to the data entries (i.e., destination) in the table to find a match.

| **FIRST NAME** | **LAST NAME** | **LOCATION** |
| --- | --- | --- |
| John | Smith | Atlanta, GA |
| Rachel | Smith | New Haven, CT |
| John | Smythe | Lancaster, PA |
| Kimberly | Smythe | Philadelphia, PA |

Turning to the Patents, in the original specification, the database (*i.e.,* destination) was queried by "date" (*i.e.,* the search term). However, during prosecution, the Applicant argued that the database must be queried by something more than the presence or absence of data. (SOF ¶¶ 57-67). The literal read of the claim limitations requires the search term to be "values attributed to each client reminder date field." (SOF ¶ 29.) There is no support in the specification of the patents for the phrases "values attributed to each client reminder date field" and "querying by values attributed to each client reminder date field," as recited in Claims 1, 5, 9, and 24 of the '468 Patent and Claims 1, 4, 7, and 9 of the '078 Patent and incorporated in each of the claims depending therefrom. Moreover, the plural syntax of the claimed limitation "values" requires that the database be queried ***by*** more than one value. (SOF ¶¶ 52-55.) Further, more than one value must be attributed to each of the client reminder date fields, as recited in the claim language. (*Id.*) As such, the date field of each of the client reminders must include more than one value and the database must be queried by such "values" attributed thereto. (*Id.*) The distinction that should be appreciated is that the "query by" phrase means the search term, not destination of search. (*Id.*) The specification, however, does not disclose how one queries a database by an entire field in that database (and it is unclear how doing so would return anything meaningful—*i.e.,* anything other than every piece of information in the database).

Prior to amendment during prosecution, all of the claims of the '468 patent required querying the database by "date." (SOF ¶¶ 57-67.) As issued, the claim requires querying the database by "values." Querying a database by "date" makes grammatical sense in that the search term for the database query is a defined comparator such as today's date, for example. However, the claims were amended to overcome the art and the term "date" was replaced with "values attributed to each client reminder date field." (*Id.*) Since "values attributed to each client

reminder date field" is representative of the actual data in the database, a query of the same database by such values would result in a query result of *all* data.  As a further example, if the table above was queried *by* "the entries attributed to the FIRST NAME column", the search terms would be "John," "Rachel," "John," and "Kimberly" and all entries would be returned. Such a query is nonsensical.

Accordingly, all of the asserted claims of the WhitServe Patents are indefinite as a matter of law, and are invalid for failure to comply with the written description and enablement requirements.

b.     **Means-Plus-Function**

Under 35 U.S.C. § 112, ¶ 6, a claim "may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."  35 U.S.C. § 112, ¶ 6 (pre-AIA).  A claim term is presumptively not subject to § 112, ¶ 6 when it does not contain the term "means." *CCS Fitness, Inc. v. Brunswick Corp.,* 288 F.3d 1359, 1369 (Fed. Cir. 2002).  However, a limitation lacking the term "means" may overcome the presumption against means-plus-function treatment if it is shown that "the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'"  *MIT & Elecs. For Imaging, Inc. v. Abacus Software*, 462 F.3d 1344, 1353 (Fed. Cir. 2006).   For a means-plus-function claim requiring a computer as the structure, the Federal Circuit has consistently required it must be "more than simply a general purpose computer or microprocessor."  *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1312 (Fed. Cir. 2012) (citing *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.,* 521 F.3d 1328, 1333 (Fed. Cir. 2008)).

Claims 1-4, 9, 13-16 of the '468 patent and claims 1, 7-8 of the '078 patent include the phrase "software executing on said computer."  Those claims are means-plus-function claims. Although the claims do not recite the term "means," considering intrinsic and extrinsic evidence, the claim limitation is so devoid of structure that the drafter must have constructively engaged in means-plus-function claiming.  *See MIT,* 462 F.3d at 1353.  A person of ordinary skill in the art would interpret the claimed function to be, for example, "automatically querying," "automatically generating," "automatically transmitting," and "automatically receiving."  (SOF ¶ 56.) The only structure allegedly recited to perform the function is "a computer."  (*Id.*)  Further, multiple claims use "software… for…," syntax that is analogous to "means…for…" limitations under Section 112, ¶ 6.  Language that "simply describes the function to be performed [is] not the algorithm by which it is performed." *Aristocrat Tech.*, 521 F.3d at 1334 . Similarly, describing the outcome "does not disclose the structure of the claimed device, but is only another way of describing the claimed function." *Id.* at 1339.   In other words, it is not enough to describe what function is performed, the specification must describe how the function is performed. *See Blackboard v. Desire2Learn*, 574 F.3d 1371, 1384 (Fed. Cir. 2009). "A patentee cannot avoid providing specificity as to structure simply because someone of ordinary skill in the art would be able to devise a means to perform the claimed function. To allow that form of claiming under section 112, ¶ 6, would allow the patentee to claim all possible means of achieving a function." *Id.* at 1385.

The Patents' specification refers to a generic preexisting script language. (SOF ¶¶ 39-51.) Yet the specification does not include any specific programming codes or algorithms that the general purpose computers and databases would use to perform the claimed methods.  (*Id.*) The claims simply refer to "software," and then describe the general purpose of the software.  (SOF ¶

29.)  Such description does not disclose a program or algorithm run by the computer or microprocessor to perform the recited function. Thus, Claims 1, 5, 9, and 24 of the '468 Patent and Claims 1, 4, 7, and 9 of the '078 Patent and each of the claims depending therefrom should be found to be indefinite for lack of sufficient disclosure under section 112, ¶ 6.

### c.        Hybrid Method/System Claims.

Claims that impermissibly mix two separate statutory classes of invention, such as methods and systems, are called "hybrid claim."  *IPXL Holdings, L.L.C. v Amazon.com, Inc*., 430 F.3d 1377, 1384 (Fed. Cir. 2005); *Rembrandt Data Tech., LP v. AOL, LLC*, 641 F.3d 1331, 1339 (Fed. Cir. 2011).  Hybrid claims are indefinite under Section 112 because they fail to clearly convey to the public when infringement occurs: *i.e.,* when the system is created, or when the method step is performed. *See IPXL*, 430 F.3d at 1384; *In re Katz Interactive Call Processing Patent Litig*., 639 F.3d 1303, 1318 (Fed. Cir. 2011).  An indefiniteness analysis of hybrid claims is an issue that is properly amenable to summary adjudication. *See IPXL*, 430 F.3d at 1384 (affirming grant of summary judgment that hybrid claims were invalid for being indefinite).

Claims 1, 5, and 9 of the '468 Patent and Claims 1, 4, 7 of the '078 Patent begin by setting forth in no uncertain terms that it is a "device" claim. (SOF [Asserted Claims]). One function of the claim preamble is to identify the statutory class of invention. "Claims should have 'preambles,' or introductory statements, the purposes of which are to indicate the statutory class of the claim (often by implication from the words in the preamble), and to name or define the thing that is to be claimed."  ROBERT C. FARBER, LANDIS ON MECHANICS OF PATENT CLAIM DRAFTING ("LANDIS"), § 2:4, at 2–4 (5th ed. 2008). Claims 1, 5, and 9 of the '468 Patent and Claims 1, 4, and 7 of the '078 Patent recites a "device," which is a type of "apparatus" claim. *Id*., LANDIS, § 3:1, at 3–2 ("The word 'apparatus' is used generically to denote various machines and devices, including … computer-related apparatuses…").

The preamble of Claims 1, 5, and 9 of the '468 Patent and Claims 1, 4, and 7 of the '078 Patent is different from the preambles of the Claim 24 of the '468 Patent and Claim 9 of the '078 Patent. For example, Claim 24 of U.S. Patent No. 5,895,468 recites "A *method* for automatically delivering professional services to a client…" (SOF ¶ 29 emphasis added). Obviously, Applicant understood how to draft a method claim but chose to draft Claims 1, 5, and 9 of the '468 Patent and Claims 1, 4, and 7 of the '078 Patent in this impermissible hybrid manner. Furthermore, although the preamble of at least Claims 1, 5, and 9 of the '468 Patent and Claims 1, 4, and 7 of the '078 Patent recite a device, the structural limitations recited in the body of the claims are also devices. For example, Claims 1, 5, and 9 of the '468 Patent and Claims 1, 4, and 7 of the '078 Patent also recite structural limitations in the body of the claim, including a "computer," a "database" and the "Internet." (SOF [Asserted Claims]. Of course, Claims 1, 5, and 9 of the '468 Patent and Claims 1, 4, and 7 of the '078 Patent also include several method steps, including for example, "automatically querying," "automatically generating," "automatically transmitting," and "automatically receiving," which must be performed by the computer.  *Id*.  This combined form is like the claims found indefinite in *IPXL Holdings*. The structural recitations included amongst the method steps must provide necessary elements to the claim, rather than merely state inherent properties of the claim. *See Ariba, Inc. v. Emptoris, Inc.*, No. 9:07–CV–90,  2008 WL 3482521, *7 n.6 (E.D. Tex. Aug. 7, 2008).  Such a mixing of structure and method steps is improper and yields an indefinite claim.  *See id*.

In *IPXL* the indefinite claim recited a "system" including an input means, and required the system's user to use the input means.  *IPXL*, 430 F.3d at 1384 ("Thus, it is unclear whether infringement … occurs when one creates a system that allows the

user to [use the input means], or whether infringement occurs when the user actually uses the input means …").  Like in *IPXL*, Claims 1, 5, and 9 of the '468 Patent and Claims 1, 4, and 7 of the '078 Patent are indefinite because it is unclear whether infringement occurs merely by creating the device that allows the user to practice the method, or whether infringement occurs when the user actually uses the device.  Claims 1, 5, and 9 of the '468 Patent and Claims 1, 4, and 7 of the '078 Patent recite a "computer" and requires the computer to execute steps of automated query, generation, transmission, and reception. (SOF ¶ 29.)  Because Claims 1, 5, and 9 of the '468 Patent and Claims 1, 4, and 7 of the '078 Patent are invalid for indefiniteness, all of the dependent claims are also invalid. *See Datamize, L.L.C. v. Plumtree Software, Inc.*, 417 F.3d 1342, 1356 (Fed. Cir. 2005) (affirming summary judgment of invalidity of all claims of patent when patent's only independent claim was held invalid for indefiniteness).

### 3.    THE WHITSERVE PATENTS ARE INVALID AS ANTICIPATED

Invalidity by anticipation under 35 U.S.C. § 102 is generally a question of fact, but can be properly resolved on summary judgment.  *Zenith Elecs. Corp. v. PDI Commc'n Sys.*, 522 F.3d 1348, 1356-57 (Fed. Cir. 2008).  Whether a patent is invalid as anticipated under 35 U.S.C. § 102 is a two-step inquiry.  The first step requires construing the claims.  *Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1406 (Fed. Cir. 2004).  The second step is to compare the properly construed claim to the prior art.  *Id.*  A single prior art that discloses all of the elements of a claimed invention, either expressly or inherently, renders the claim invalid as anticipated. *Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1332 (Fed. Cir. 2010); *Schering Corp. v. Geneva Pharmas.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003) ("a prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference").

###### a.   The Foo Article Anticipates '468 Claims 1-4, 24-27 and '078 Claims 1, 9-10 of the WhitServe Patents.

A patent claim is invalid if "the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent ...."  35 U.S.C. § 102(a); *Novo Nordisk Pharmas., Inc. v. Bio-Tech. Gen. Corp.*, 424 F.3d 1347, 1354-55 (Fed. Cir. 2005).  To qualify as prior art under 102(a), a printed publication need only be available to "interested persons," and not the general public prior to the priority date of the asserted patent.  *Cooper Cameron Corp. v. Kvaerner Oilfield Products, Inc.*, 291 F.3d 1317, 1321, 1324 (Fed. Cir. 2002).  Here, the article entitled "Computational Electronic Mail For Library Applications" ("Foo Article") was published by the Library and Information Technology Association of Singapore's 1996 publication, *Network Information*, in March 1996 (before the October 1996 filing date of the '468 patent).  (SOF ¶ 85.) The Foo Article was widely distributed to members of the interested public, its members, and available to non-members for a modest fee.  (*Id.*)  Thus, the Foo Article is prior art under §102(a).

As Dr. Goldberg explains, the Foo Article discloses a prior art system called "CEMail" that "can be used to automate a number of everyday functions in [a] typical library environment," including "automatic overdue reminders with automatic renewal."  (SOF ¶ 87.) The CEMail system automatically transmitted a library book overdue notice and renewal form over Internet email, and displayed these on a browser running on the user's computer.  (*Id.* ¶ 88.) By clicking on interactive portions of the response form, a book borrower could indicate a renewal (or return) preference:



(SOF ¶¶ 85-91, Exhibit Y (claim chart).)  The CEMail automatically processes the borrower's "renew" or "return" response and further automatically processes this response, for example by sending confirmations and updating the library's card catalogue database.  (*Id.*)  Importantly, the Foo Article was not considered by the Patent Office during the prosecution of the WhitServe Patents.  (SOF ¶ 90.)

The element-by-element disclosure of the Foo Article as compared to the WhitServe Patents' claims is depicted in the claim chart attached hereto as Exhibit Y.  Because Foo discloses each and every limitation of the asserted claims, those claims are invalid.  *Therasense*, 593 F.3d at 1332; *Schering Corp.*, 339 F.3d at 1377.  Dr. Goldberg concurs.  (SOF ¶ 91.)

> **b.    The Network Solutions Domain Name Renewal "Message Ticketing System" Anticipates '468 Claims 1-4, 24-27 and '078 Claims 1, 9-10 of the WhitServe Patents.**

To the extent the Court permits Go Daddy to rely on materials produced by Network Solutions,[5] the Network Solutions "Message Ticketing System" ("MTS") reads on the claims in nearly the same way in which WhitServe accuses Go Daddy's domain renewal services of

---

[5] *See* Dkt. Nos. 198-201, 204-208.

infringement.  (SOF ¶ 92.)  In particular, Network Solutions introduced an automated registration system based on emails and templates for handling domain, contact, Internet IP address, and other entity registrations as early as March 1993.  (SOF ¶¶ 93-98.)  The MTS system was operating as an automated system for reminding customers of deadlines and automatically receiving and processing responses to the reminders at least as early as September 30, 1994. (*Id.*)

Because the MTS was available to and used by the public over the Internet over a year before the WhitServe Patents' priority date of October 7, 1996, the MTS is a prior art system under at least Sections 102(a), 102(b), and 102(g)(2).  *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998) ("[I]n order to invalidate a patent based on prior knowledge or use, that knowledge or use must have been available to the public."); *Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1357-59 (Fed. Cir. 2008) (finding no genuine issue of material fact as to public use of prior art television-speaker combination); *Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1570 (Fed. Cir. 1997) (affirming summary judgment of invalidity based on prior-art public use of computer system even though certain aspects of the computer system were secret); *Eolas Techs. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1333-35 (Fed. Cir. 2005) (finding claims anticipated by public use under § 102(b), prior invention under § 102(g), or obviousness under § 103(a) where prior computer code invention was placed on the Internet).

Generally, the MTS worked much the same way as WhitServe accuses the Go Daddy "My Renewals" of functioning.  Network Solutions maintained   **-REDACTED-** (SOF ¶¶ 93-98 [NET000383].)  **-REDACTED-**  (*Id.* [NET000398-410].)  The MTS would**-REDACTED-**. (SOF ¶¶ 93-98.)  Here is an exemplary MTS reminder email:

-REDACTED-

\* \* \*

-REDACTED-

(*Id.* [NET000538].)  As can be seen in this image, the reminder email **-REDACTED-**.  The MTS

response **-REDACTED-**

-REDACTED-

(*Id.* [NET000541].)                    **-REDACTED-**


(*Id.* [NET000539].)  Indeed, Mr. Whitmyer himself was familiar with the MTS automatic

domain renewal system, considering he was using it in the 1996-1997 timeframe in registering

his own domain names.  (*Id.*)  Nevertheless, the Network Solutions MTS system was not

presented to the Patent Office during prosecution of the WhitServe Patents, and the Patent Office

did not consider MTS when determining the patentability of Mr. Whitmyer's alleged invention.

(*Id.*)

        The element-by-element disclosure of the MTS system as compared to the WhitServe

Patents' claims is depicted in the claim chart attached hereto as Exhibit [NetSol chart].  (SOF

[Goldberg Supp. Rept. ¶¶ 3-5].)  Because MTS discloses each and every limitation of the

asserted claims, those claims are invalid.  *Therasense*, 593 F.3d at 1332; *Schering Corp.*, 339

F.3d 1377.

                c.      **The S-K Chang Article Anticipates '468 Claims 1-4, 24-27 and
                        '078 Claims 1, 9-10 of the WhitServe Patents.**

        In 1985, over a decade before Mr. Whitmyer filed for his patents, engineers Shi-Kuo

Chang and Wu-Lung Chan published an article entitled "Transformation and Verification of

Office Procedures" in the research industry publication of IEEE Transactions on Software

Engineering (the "S-K Chang Article").  Thus, like the Foo Article, the S-K Chang Article is a

prior art printed publication under Section 102(a).  *Cooper Cameron*, 291 F.3d at 1321, 1324.

As Dr. Goldberg explains, the S-K Chang Article presents a formal "Office Procedure

Model" ("OPM") for automating various office procedures.  (SOF [Goldberg Rept. ¶¶ 48-53].)

The OPM included automated reminders such as "alerter rules" based on dates and stored in an

"alerter database."  (*Id.*)  OPM further discloses the automated transmission of "interactive

forms" upon the triggering of alerter reminders.  (*Id.*)  The S-K Chang Article discloses the

following exemplary system architecture:



Fig. 1.  Organization of an office information system.

(*Id.* [¶ 49].)  The S-K Change Article discloses one application of the OPM model as automating

a graduate school admissions process.  (*Id.* [¶ 51].)  Once a student submits an application for

admission through the OPM system, the OPM system assigns the application for review by a

particular faculty member and automatically transmits reminders to the faculty when they have

not replied with their review within a certain time.  (*Id.*)  After a certain number of reminders,

the OPM "alerter" automatically sends a message to the graduate director who can, through an "interactive form," select a new faculty member to review the application.  (*See* SOF.)  Once all assigned faculty have responded, the OPM system automatically transmits another interactive form to the graduate director that prompts a final decision.  (*See* SOF.)

The element-by-element disclosure of the S-K Chang Article as compared to the WhitServe Patents' claims is depicted in the claim chart attached hereto as Exhibit DD.  (*See* SOF.)  Because MTS discloses each and every limitation of the asserted claims, those claims are invalid.  *Therasense*, 593 F.3d at 1332; *Schering Corp.*, 339 F.3d at 1377.

### 4.      THE WHITSERVE PATENTS ARE INVALID AS OBVIOUS

Obviousness is a question of law based on underlying factual inquiries.  *W. Union Co. v. MoneyGram Payment Sys., Inc.*, 626 F.3d 1361, 1369 (Fed. Cir. 2010).  The underlying factual inquiries include (1) the scope and content of the prior art; (2) the differences between the prior art and the claims at issue; (3) the level of ordinary skill in the art; and (4) any relevant secondary considerations, such as commercial success, long felt but unsolved needs, and the failure of others.  *Id.*  A patent is invalid as obvious if the prior art includes separate references covering each limitation in the claims, and a person of ordinary skill at the time of the invention would have selected and combined those prior art elements in the normal course of research and development to yield the claimed invention.  *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418, 421 (2007) (noting that a person of ordinary skill has "ordinary creativity, [and is] not an automaton").

#### a.      The WhitServe Patents Are Obvious In View Of Foo, Network Solutions, Or S-K Chang, Either Alone Or Combined.

To the extent the Court finds that one or more limitations of the WhitServe Patents claims are not expressly or inherently disclosed by the Foo Article, Network Solutions MTS system, or

S-K Chang Article, Dr. Goldberg has opined that one of ordinary skill in the art would have combined one or more of these references in order to arrive at the alleged invention as claimed. (*See* SOF.)  Dr. Goldberg has further opined that the foregoing references on their own when combined solely with the knowledge, skill, or training of one skilled in the art would also render the WhitServe Patents obvious.  (*See* SOF.)

Moreover, Dr. Goldberg has provided unrebutted evidence that one of ordinary skill in the art would have been motivated to combine the foregoing references.  (*See* SOF (citing Goldberg depo) ("the prior art was so replete with office automation systems that managed reminders and deadlines that I don't believe any hindsight was called for")].)  For example, one of ordinary skill would have been motivated to combine the S-K Chang office automation reference with one or more references further disclosing automated transmission of reminders or response forms, such as the Network Solutions MTS or Foo CEmail systems.  (*Id.*)  This is true because these references share common software scripts, methods, functionality, and approaches used.  (*Id.*)  As Dr. Goldberg notes, these combinations would have produced no unexpected results and at most represent known alternatives at the time.  (*Id.*)  He further notes that it was well-known in the prior art that it was desirable to use computers to automate office functions like tracking due dates for intellectual property.  (*Id.*)  *See KSR*, 550 U.S. at 414-18 (rejecting the Federal Circuit's "rigid" application of a requirement of teaching, suggestion, or motivation to combine and instead applying an "expansive and flexible" approach where "in many cases a person of ordinary skill in the art will be able to fit the teachings of multiple [prior art references] together like pieces of a puzzle").

Further, due at least to the bounty of well-developed prior art involving automated office procedures, automated renewal reminder emails, and other electronic communications such as

web pages, there are no secondary indicia of nonobviousness to undermine Dr. Goldberg's opinion.  (*See* SOF.)  To date, WhitServe has not rebutted these conclusions, nor can it.[6]

> **b.    The PerfectLaw Automated Legal Docketing System Further Renders The WhitServe Patents Obvious.**

For over three decades, PerfectLaw[7] software has provided standard docketing software that allows law firms to manage intellectual property deadlines. (*See* SOF..)  John Duncan of a company called EDSI created the PerfectLaw source code, and the software was in public use as early as 1982.  (*Id.*)  Thus, PerfectLaw qualifies as prior art at least for the same reasons as does the Network Solutions MTS system.  *Woodland Trust*, 148 F.3d at 1370; *Lockwood*, 107 F.3d at 1570; *Eolas Techs.*, 399 F.3d at 1333-35.

The PerfectLaw software **-REDACTED-**  (*Id.*)  The software **-REDACTED-** (*Id.*)   The PerfectLaw software, **-REDACTED-**  (*Id.*)   The PerfectLaw software further could **-REDACTED-**. (*Id.*)

PerfectLaw **-REDACTED-**.  (*Id.*)  **-REDACTED-**.  An element-by-element disclosure of the PerfectLaw system as compared to the WhitServe Patents' claims is depicted in the claim chart attached hereto as Exhibit [FF.

Dr. Goldberg has concluded that the PerfectLaw system renders the asserted claims of the WhitServe Patents obvious in view of the existing art and knowledge of one of ordinary skill, or both.  (*Id.*)  The analysis for motivation to combine is the same as for the prior art references

---

[6] To the extent WhitServe serves its own expert report in rebuttal to Dr. Goldberg's opinions, Go Daddy reserves the right to address any evidence or opinions set forth therein in Go Daddy's reply brief in support of the current Motion.

[7] "PerfectLaw" is meant to refer to the "suite" of products and services offered by EDSI. (*See* SOF [Duncan Dep. (rough) at 55].)  This includes at least the Attorney Information Management ("AIM") software, Document Assembly software, "Total Novell Solution" suite of software products, and Docket System II.  (*See id.*)

discussed above, which is incorporated here.  For example, one of ordinary skill would have been motivated to combine the PerfectLaw automated legal docketing system with one or more references further disclosing automated transmission of reminders or response forms, such as the Network Solutions MTS or Foo CEmail systems.  (*Id.*)  WhitServe has not offered any evidence to the contrary.

Therefore, the WhitServe Patents are rendered obvious in view of the Foo Article, Network Solutions MTS, the S-K Chang Article, and/or PerfectLaw.


## IV.    CONCLUSION

For all the foregoing reasons, all of the asserted claims of the WhitServe Patents are invalid.  Go Daddy respectfully requests that the Court grant this Motion in its entirety.

Respectfully submitted,

**BALLARD SPAHR LLP**

By: *Brian W. LaCorte*
Brian W. LaCorte (Federal Bar No. phv04864)
lacorteb@ballardspahr.com
Donna H. Catalfio (Federal Bar No. phv04865)
catalfiod@ballardspahr.com
Andrea L. Stone (Federal Bar No. phv04866)
stonea@ballardspahr.com
One East Washington Street, Suite 2300
Phoenix, Arizona 85004
Telephone: (602) 798-5449
Facsimile: (602) 798-5595

**MURTHA CULLINA LLP**

Elizabeth J. Stewart  (Federal Bar No. ct01316)
estewart@murthalaw.com
Whitney Grove Square
2 Whitney Avenue
New Haven, CT 06510
Telephone: 203-772-7710

Facsimile: 860-240-5928

*Attorneys for Defendant GoDaddy.com, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 17, 2012, a true and correct copy of the foregoing

Redacted Memorandum in Support Motion for Summary Judgment of Invalidity was filed

electronically.  Notice of this filing will be sent by email to all parties by operation of the Court's

electronic filing system.  Parties may access this filing through the Court's system.

*Brian W. LaCorte*
Brian W. LaCorte (Federal Bar No. hv04864)