## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| WhitServe LLC, | |
| Plaintiff(s), | Civil Action No. 3:11-cv-00948-WGY JURY DEMAND |
| v. | |
| GoDaddy.com, Inc. | |
| Defendant(s). | |

### WHITSERVE LLC'S OPPOSITION TO GODADDY.COM, INC.'S
### MOTION FOR SUMMARY JUDGMENT OF INVALIDITY

WhitServe LLC ("WhitServe") respectfully submits its brief in opposition to Go Daddy.com, Inc.'s Motion for Summary Judgment of Invalidity.

## I.      INTRODUCTION

United States Patent Nos. 5,895,468 and 6,182,078 ("the WhitServe Patents") are valid; and they have proven valid, through years of litigation, review by the Federal Circuit, and most recently, the denial of a request for reexamination.  Further evidence of their validity is Go Daddy's inability to decide upon a single challenge worthy of focused discussion. Because of the plethora of arguments to which WhitServe must respond, and the Court's forty page limit on briefs, WhitServe must refer to its Opposition to Go Daddy's Memorandum for Summary Judgment Concerning Patent Marking, Infringement, and Claim Construction for a discussion of the content and history of the WhitServe Patents.

## II.      LEGAL STANDARD

Summary judgment is appropriate where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed R. Civ. P. 56(a). "A patent is presumed valid, and the burden of persuasion to the contrary is and

remains on the party asserting invalidity." *Ralston Purina Co. v. Far-Mar-Co.*, 772 F.2d 1570, 1573 (Fed. Cir. 1985).

## III.    THE PATENT CLAIMS ARE NOT INELIGIBLE UNDER § 101

Go Daddy argues that the claims at issue are invalid under 35 U.S.C. § 101. It refers to a single judge's *dissenting* opinion from a Federal Circuit ruling that upheld the validity and enforceability of the claims.  *WhitServe, LLC v. Computer Packages, Inc.*, 694 F.3d 10 (Fed. Cir. 2012). Go Daddy ignores the fact that WhitServe Patents have been reviewed multiple times by the USPTO and the courts, which have rejected § 101 arguments and upheld validity. It rests its argument on inapposite case law that involved process claims and inventions for which no machine was essential.  The WhitServe Patent claims, however, are directed to systems with specific structural components. They do not cover any mental processes and do not preempt Go Daddy from practicing any natural law.

### A.    The Validity Of The Claims Has Been Upheld by the Courts and the USPTO

The validity of the WhitServe Patents under § 101 was raised in *WhitServe LLC v. Computer Packages, Inc.*, No. 3:06CV01935 (D. Conn. filed Nov. 30, 2006). (SOF ¶ 120-121.)  Defendant Computer Packages, Inc. ("CPi") was unable to invalidate the WhitServe Patents and a jury found all of the asserted claims willfully infringed.  (SOF ¶ 121.)   On appeal, the Federal Circuit questioned the parties regarding § 101. (SOF ¶ 122.)   In response to the panel's questions, counsel for WhitServe distinguished the claimed subject matter from abstract ideas, noting that it includes device claims directed to computer hardware and the physical interaction between components.  (SOF ¶ 123.)

The Federal Circuit upheld the claims and affirmed CPi's infringement. *WhitServe*, 694 F.3d at 39.

CPi petitioned for a rehearing *en banc* on the basis that the patents were invalid under § 101. (SOF ¶ 124.)  On October 10, 2012, the Federal Circuit denied this petition. (SOF ¶ 125.)  CPi then moved to stay issuance of the court's mandate on the basis of a Petition for a Writ of Certiorari that the patents were invalid under § 101. (SOF ¶ 126.) The Federal Circuit denied this as well.  (SOF ¶ 127.)

The claims have also been reviewed by the USPTO at least three times. (SOF ¶ 128-30.)  The claims were initially found eligible for patent protection when each of the WhitServe Patents was granted. (SOF ¶ 129.) In addition, at least three USPTO Primary Examiners recently reviewed the '468 patent again when considering an *ex parte* reexamination request that set forth § 101 invalidity arguments.  (SOF ¶ 130-31.) Despite the 92% success rate of such requests, reexamination of the '468 patent was denied.  (SOF ¶ 132-33.)

**B.    The Claims Are Not Directed To Abstract Mental Processes But Have Patentable Structure**

Go Daddy argues that the WhitServe patents are directed to an abstract idea. (Def.'s Mem. at 11-20.) A cursory review of the claims shows this to be false.  The claims require specific physical structure; the patentability of which is a basic tenet of patent law.  35 U.S.C. § 101 ("…any new and useful process, machine, manufacture, or composition of matter…").  *Electric Railroad-Signal Co. v. Hall Railway-Signal Co.*, 114 U.S. 87, 96 (1885) ("The thing patented is the particular means devised by the inventor by which that result is attained, leaving it open to any other inventor to accomplish the same result by other means."); *Diamond v. Diehr*, 450 U.S. 175, 192 (1981).

The claims of the WhitServe Patents cover a specific structure of physical components—specific databases and specific software to generate specific items and perform specific functions. (SOF ¶¶ 29, 134.)  For example, representative claim 1 of the '468 patent is a device claim that requires, *inter alia*, a database containing a plurality of client reminders, each of the client reminders comprising a date field having a value attributed thereto. (SOF ¶ 29)  This is not an abstract idea, but a specific database as implemented in a computer. (SOF ¶ 135.)  In fact, the USPTO repeatedly described this limitation as *specific structure* when denying reexamination of the '468 patent. (SOF ¶¶ 139-40)  ("<u>the specific structure</u> of a client reminder with a date field", "<u>This is a specific structure</u> that must be in the reference in order to be considered under 102").

The representative claim also requires specific software.  The claim requires "software executing on said computer for automatically querying said database by the values attributed to each client reminder date field to retrieve a client reminder." (SOF ¶ 29.)  This performs a specific function to retrieve a specific item (client reminder). (SOF ¶ 136.)  That this particular software has something more than just an abstract meaning is evidenced by the fact that the specific limitation of "[by] the values attributed to each client reminder date field" was added to the claims to overcome prior art rejections. (SOF ¶ 146.)

The claim also requires "software executing on said computer for automatically generating a client response form based on the retrieved client reminder."  (SOF ¶ 29.)  The client response form which is generated is particularized and has specific structural limitations as is evident from both parties constructions of the term. (SOF ¶¶ 75, 137, 238.)

The representative claim further requires "a communication link between said computer and the Internet," which simply cannot be an abstraction. (SOF ¶ 129.)  The representative claim finally requires software for transmitting and receiving a form over the Internet. (*Id.*)

Go Daddy ignores the structure within the WhitServe Patent claims and even the fact that many of the asserted claims are explicitly directed to a "device." Go Daddy invokes the machine-or-transformation test as a determining factor for "whether a patent claim fails Section 101 as an abstract idea," but omits the critical fact that this test is directed to process claims. *Bilski v. Kappos*, 130 S. Ct. 3218, 3224 (2010).

Indeed, the cases on which Go Daddy principally involved claims which were invalidated because they encompassed solely mental processes. For example, Go Daddy relies on *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, which concerned process claims for calibrating proper drug dosage for treating disease.  132 S. Ct. 1289 (2012).  The court analyzed the two method steps, noting that the first "administering step simply refers to the relevant audience, namely doctors," while the second "determining step tells the doctor to determine the level of the relevant metabolites in the blood, through whatever process the doctor or the laboratory wishes to use." *Id*. at 1297.  The Supreme Court noted that the claims had no structure and could be performed mentally. *Mayo*, 132 S. Ct. at 1299.  As a result, the patents "effectively claim the underlying laws of nature themselves." *Id*. at 1305; *Id*. at 1300 ("they are steps that must be taken in order to apply the laws in question").  However, the court did note that an unpatentable law of nature can be transformed into patent-eligible subject matter by "limit[ing] its reach to a particular, inventive application of the law." *Id*. at 1290.

Accordingly, meaningful structural limitations can confer patent eligibility even for process claims directed to natural laws.

The Federal Circuit cases cited by Go Daddy are similarly unavailing. The Federal Circuit in *CyberSource v. Retail Decisions* reviewed claims that did "not require the method to be performed by a particular machine, or even a machine at all." *CyberSource Corp.*, 654 F.3d 1366, 1370 (Fed. Cir. 2011). As a result, because the process claims "capture[d] unpatentable mental processes (i.e., abstract ideas), they were invalid under § 101." *Id.* at 1376-77. Although one of the claims nominally recited computer storage medium, the court found this incidental to what was in fact a claimed method. *Id.* at 1375. The court distinguished those cases in which patent eligible subject-matter existed because, "as a practical matter, the use of a computer [was] required to perform the claimed method" and "the method could not . . . be performed entirely in a human's mind." *Id.* at 1376.

The case of *Dealertrack*, *Inc. v. Huber* involved method claims, albeit methods that recited "computer-aided" in the preamble. *Dealertrack*, 674 F.3d 1315 (Fed. Cir. 2012). Again, the court found "[t]he claims . . . do not require a specific application, nor are they tied to a particular machine." *Id.* at 1333-34. The court stated that "[s]imply adding a 'computer aided' limitation to a claim covering an abstract concept, without more, is insufficient to render the claim patent eligible." *Id.* at 1333.

Similarly, in *Bancorp Services, LLC v. Sun Life Assurance Co.* the Federal Circuit found that claims did not require a computer, and that the steps could be completed manually. *Bancorp*, 687 F.3d 1266, 1275 (Fed. Cir. 2012). The claims lacked structure and the court stated that nominal use of a computer "for no more than its most basic

function—making calculations or computations—fails to circumvent the prohibition against patenting abstract ideas and mental processes." *Id.* at 1278.

The cases cited by Go Daddy all involved claims so broad that they covered mental processes and, as a result, were invalid as abstract ideas. *See Benson*, 409 U.S. at 67 (1972) (abstract ideas characterized as process that "can be done mentally").  Go Daddy did not, and could not, cite any case that supports the ineligibility of inventions like those claimed in the WhitServe Patents.  In fact, the cited cases support eligibility because the Supreme Court and Federal Circuit have made clear that structure serving to avoid mental processes is eligible under § 101. *See, e.g., CyberSource*, 654 F.3d at 1376 (noting that claims are eligible where the "use of a computer [was] required to perform the claimed method").

The subject-matter claimed in the WhitServe Patents requires a specifically defined database, specific software from which to generate forms, and transmission over the Internet. (SOF ¶¶ 135-141.) Such elements are intrinsically intertwined with a physical computer. None of the cases upon which Go Daddy relies recite any of the aforementioned structure. The claims are not abstract.

Go Daddy provides no legal basis for re-writing the elements of the claims as mere abstract ideas. (Def.'s Mem. at 13.) However, even under Go Daddy's "abstraction chart," the claims still ***require*** the use of a computer. (*Id.*) Forms must still be sent and retrieved through the Internet (*Id.*). This requires a computer. Thus, even after taking all liberties in the abstraction of the database limitation (which was explicitly found to be "specific structure" by the USPTO) and the software limitations, Go Daddy still cannot divorce the invention from a machine.

Go Daddy attempts to dismiss the "Internet" limitation of the WhitServe Patent claim, without any support in the case law. The claims at issue in *Dealertrack* made no mention of the Internet. 674 F.3d at 1319. And, unlike in *CyberSource* where the Internet was merely a source of data, transmission through the Internet is a central claimed element of the WhitServe Patent claims. 654 F.3d at 1370.

It is not the recitation of transmitting over the Internet alone which makes the WhitServe Patent claims subject matter eligible. This element is simply further evidence that the inventions of the WhitServe Patents cannot truly be abstracted from the computer and specific software recited in the claims. (SOF ¶ 141.)

**C.    The Claims Do Not Preempt Go Daddy From Practicing Any Natural Law**

The Federal Circuit has stated that the § 101 inquiry turns on whether claims "too broadly" preempt use of natural laws by others.  *Mayo*, 132 S. Ct. at 1294; *Id*. at 1299 ("the patentees did not 'seek to pre-empt the use of [the] equation,' but sought 'only to foreclose from others the use of that equation in conjunction with all of the other steps in their claimed process") (citing *Diamond v. Diehr*, 450 U.S. 175 (1981)); *Bilski*, 130 S. Ct. at 3231.  *See also Bancorp*, 687 F.3d at 1280 ("Bancorp's claimed abstract idea impermissibly 'prempt[s]' the mathematical concept").

Go Daddy offers unsupported attorney argument that "the WhitServe Patents attempt to preempt the basic and abstract concept of minding deadlines—of reminding another about a deadline through some type of communication over the Internet." (Def.'s Mem. at 11.)  Leaving aside that the claims are much more detailed than this, Go Daddy never explains *how* even this concept is purportedly preempted by the WhitServe Patents. Indeed, Go Daddy elsewhere argues that it uses non-infringing alternatives such as the

manual processing of renewals.  (Dkt. 222-1 at 22.)   As discussed, the WhitServe Patents require specific structure of databases and software. (SOF ¶¶ 134-141.)  Accordingly, Go Daddy is not preempted and need not practice the claimed invention in order to remind its customers of deadlines over the Internet.  That it chooses to do so is not a reason for invalidating the WhitServe Patents.  This has already been recognized by the District of Connecticut, the Federal Circuit, the USPTO, and dozens of licensees of the WhitServe Patents.

## IV.     THE PATENTS ARE NOT INVALID UNDER 35 U.S.C. § 112

Go Daddy argues that all claims fail the enablement, written description, and definiteness requirements; all independent claims of the patents directed to a "device" (as opposed to a "method") are indefinite for a lack of sufficient disclosure under 35 U.S.C. § 112, ¶ 6; and all "device" claims are invalid as "hybrid" claims. (Def.'s Mem. 27.) They are not.

### A.     The Claims Do Not Fail the Enablement, Written Description, and Definiteness Requirements

Go Daddy asserts that all independent claims of the WhitServe Patents are "indefinite as a matter of law, and are invalid for failure to comply with the written description and enablement requirements." (Def.'s Mem. at 23.) Each of these three requirements (enablement, written description, and definiteness) is governed by its own standard. Go Daddy does not apply any of these standards to the claims. Rather, Go Daddy presents an amorphous argument, lumping together enablement, written description, and definiteness. The patent claims do not fail any of the §112 requirements, and Go Daddy has not presented clear and convincing evidence otherwise. *See Microsoft*

*Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011) (holding that patent invalidity must

be established by clear and convincing evidence).

### 1. Legal Standards of Enablement, Written Description, and Indefiniteness

As stated, Go Daddy does not individually address enablement, written

description, or indefiniteness. Nevertheless, each of these defenses is governed by a

distinct legal standard. These standards are as follows.

### a. Enablement

Enablement "is a question of law with factual underpinnings." *CFMT, Inc. v.*

*YieldUp, Int'l Corp.*, 349 F.3d 1333 (Fed. Cir. 2003). To satisfy the enablement

requirement, "the specification of a patent must teach those skilled in the art how to make

and use the full scope of the claimed invention without undue experimentation." *Martek*

*Biosciences Corp. v. Nutrinova, Inc.,* 579 F.3d 1363, 1378 (Fed. Cir. 2009). "Whether

undue experimentation is needed is not a single, simple factual determination, but rather

is a conclusion reached by weighing many factual considerations." *Id.* (quoting *In re*

*Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988)). Factors to be considered in determining

whether a disclosure would require undue experimentation include:

> (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims.

(*Id.*)

### b. Written Description

Whether a specification complies with the written description requirement is a

question of fact. *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1319 (Fed.

Cir. 2003). Compliance with the written description requirement entails "sufficient

information in the original disclosure to show that the inventor possessed the invention at the time of the original filing." *Id.* at 1320. "The written description requirement does not require the applicant 'to describe exactly the subject matter claimed, [instead] the description must clearly allow persons of ordinary skill in the art to recognize that [he or she] invented what is claimed'" *Union Oil Co.  v. Atlantic Richfield Co.*, 208 F3d 989, 997 (Fed. Cir. 2000) (citations omitted).

### c.        Indefiniteness

"Indefiniteness, like claim construction, is a question of law." *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1319 (Fed Cir. 2008). A patent specification must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112 ¶ 2. The purpose of the definiteness requirement is "to ensure that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude." *Datamize, LLC v. Plumree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005). The definiteness requirement "does not compel absolute clarity." *Id.* "Only claims not amenable to construction or insolubly ambiguous are indefinite." *Id.* (quotations omitted). Issued patents are entitled to a statutory presumption of validity. 35 U.S.C. § 282. "By finding claims indefinite only if reasonable efforts at claim construction provide futile, [courts] accord respect to the statutory presumption of validity and . . . protect the inventive contribution of patentees, even when the drafting of their patents has been less than ideal." *Datamize*, 417 F.3d at 1347-48.

> **2.     G**o **Daddy's Assertions as to Enablement, Written Description, and/or Indefiniteness Do Not Invalidate Any Claim of the Patents**

11

Go Daddy makes a number of arguments in the section of its brief entitled "Enablement, Written Description, and Definiteness." (Def.'s Mem. 20-23.) They are addressed in turn.

### a. It is untrue that numerous claim terms are unsupported by the specification

Go Daddy begins by asserting that: "As admitted by the inventor himself, there are numerous claim terms that do not have clear 'ordinary' meanings and that the specification does not describe in detail to assist one of ordinary skill in the art on how to make and use the invention, and thus are indefinite as a matter of law." (Def.'s Mem. at 21.) It is unclear whether Go Daddy is asserting that the claims just fail the definiteness requirement, or also the enablement and written description requirements. In any event, the inventor, Mr. Whitmyer, did not admit a lack of ordinary meaning, a lack of support in the specification, or a lack of enablement. (Def.'s Mem. at 21.)

Go Daddy cites to paragraphs 52-55 of its Statement of Facts to support its claim that Mr. Whitmyer admitted the invalidity of his claims. (Def.'s Mem. at 21.) These paragraphs are irrelevant to this assertion.

Go Daddy ignores the patents specifications, which discuss and support all of the terms deemed problematic by Go Daddy. As to "client reminders," the specifications state that client reminders are stored in a database, retrieved on a periodic basis, and contain "information pertinent to the upcoming professional service to be rendered, such as . . . ." (SOF ¶ 142.) As to "date field having a value attribute thereto" and "values attributed to each client reminder date field," the specification describes client reminders, stored in a database, that contain a "deadline for the service to be rendered." (SOF ¶ 142-43.) And as to the "response form" and "form" of the '468 and '078 patents, respectively,

the specifications state that they are generated based on a retrieved client reminder, automatically transferred through an Internet communication link, and "contain pertinent information contained in the client reminder as well as the client's options regarding the professional service to be performed." (SOF ¶ 144.)

There is no basis to conclude, as a matter of law, that: a) one of ordinary skill in the art would not know how to make and use the claimed invention due to the aforementioned terms, b) the specification is insufficient to show that the inventor possessed the invention at the time of original filing, or c) that the claims are insolubly ambiguous.

> **b. The claim elements "values attributed to each client reminder date field" and "querying by values attributed to each client reminder date field" are supported and are not ambiguous.**

Go Daddy next asserts that there is no support in the specification of the patents for the phrases "values attributed to each client reminder date field" and "querying by values attributed to each client reminder date field." (Def.'s Mem. at 22.) As discussed above, however, the specification clearly defines client reminders as existing within databases. (SOF ¶ 142.)The specification further states that the client reminders can contain deadlines for services to be rendered. (SOF ¶ 143.) The specification further discloses querying by dates. (SOF ¶ 145.) During the prosecution of the '468 patent, all of these portions of the specification were cited to the examiner as support for the distinction that the queries of this invention relate to the value in the field, as opposed to the presence or absence of data within that field. (SOF ¶ 146.) Therefore, not only is there support in the specification for the phrases "values attributed to each client reminder fate field" and "querying by values attributed to each client reminder date field," this support

was specifically brought to the attention of and accepted by the United States Patent and Trademark Office.

With no reference to either the specification or the prosecution history, Go Daddy makes a convoluted argument to conclude that the phrase "querying by values attributed to each client reminder date field" is indefinite. (Def.'s Mem. at 22.) First, Go Daddy construes the claim phrase "querying by values attributed to each client reminder date field." (*Id.*) Go Daddy argues that the "plural syntax of the claimed limitation 'values' requires that the database be queried ***by*** more than one value." (*Id.*) Go Daddy's construction ignores the intrinsic record and the surrounding claim language.

Prior to the relevant phrase "querying by values attributed to each client reminder date field," the claims recite "a database containing *a plurality of client reminders*, each of the client reminders comprising *a date field having a value* attributed thereto." (SOF ¶ 29.) Thus, the claims themselves explicitly recite: 1) a *plurality of client reminders*, and 2) that each client reminder has *a value* attributed thereto. Therefore, from the claims themselves, it is abundantly clear that the word "values" does not necessitate a single query involving multiple values. (SOF ¶ 149.) Rather, "querying by values attributed to each client reminder date field" refers to the fact, as already recited in the claims, that there are multiple values amongst the plurality of client reminders. The prosecution history affirms this interpretation. In the course of prosecuting the '468 patent Mr. Whitmyer asserted that the query depends on "*the value of the field*, not . . . on the presence of absence of data in the field." (SOF ¶ 146.)

Go Daddy continues with its construction of the claim phrase "querying by values attributed to each client reminder date field." (Def.'s Mem. at 22.) Go Daddy contends

that: "the 'query by' phrase means the search term, not the destination of the search." (*Id.*) In other words, Go Daddy proposes that the values contained in the database are not what is queried, but rather that the values in the database are the terms used to query the database. Go Daddy admits that there is no support for this interpretation in the specification. (*Id.*) Go Daddy nevertheless contends that it is the right construction, despite it being allegedly so nonsensical as to render the claims indefinite. (Def.'s Mem. at 23.) Go Daddy's construction is not correct.

As the applicant explained to the examiner in the course of the prosecution of the '468 patent: "querying the database by date, as required by all claims, means identifying those reminders with impending deadlines and discarding those without impending deadlines." (SOF ¶ 147.) The applicant further explained: "Thus, the present invention is a system where a large number of reminders can be stored, each reminder including a date field. Software, on a periodic basis, ***automatically examines the date field*** of each reminder to determine if any action is necessary at that time." (SOF ¶ 148.) The intrinsic record, therefore, supports construing the claim phrase "querying by values attributed to each client reminder date field" to mean that the values in the date fields are what is being queried. This phrase is not insolubly ambiguous. ( SOF ¶ 150.) Therefore, it is not indefinite. *See Datamize, LLC*, 417 F.3d at 1347 ("Only claims not amenable to construction or insolubly ambiguous are indefinite.") *Id.*

## B.      The "Device" Claims Are Not Means-Plus-Function Claims

Go Daddy's next argument is that claims 1-4, 9, 13-16 of the '468 patent and claims 1, 7-8 of the '078 patent are means-plus-function claims in accordance with 35 U.S.C. § 112 ¶6 (now 35 U.S.C. 112(f)) and indefinite for a lack of sufficient disclosure. (Def.'s Mem. at 23-25.) Go Daddy's argument is vague. Go Daddy does not look at any

individual claim element and explain why it must be governed by means-plus-function. (*Id.*) Nor does Go Daddy explain why any particular claim element is unsupported by a sufficient disclosure of structure. (*Id.*) The fact is, the claims have never been construed as means-plus function claims (SOF ¶ 217), and Go Daddy presents nothing to rebut the presumption flowing from the absence of the word "means" in the claims.

Determining whether the special rules of claim construction set forth in § 112 ¶ 6 apply to a given claim limitation is straightforward. *Flo Healthcare Solutions, LLC v. Kappos*, 697 F.3d 1367, 1373 (Fed. Cir. 2012). "[U]se of the words 'means' creates a rebuttable presumption that the drafter intended to invoke § 112 ¶ 6, while failure to use the word 'means' creates a rebuttable presumption that the drafter did not intend the claims to be governed by § 112 ¶ 6." *Id.* When the word "means" is absent, the presumption is strong that § 112 ¶ 6 does not govern, and this presumption is not easily overcome. *Id.* at 1374. Section 112 ¶ 6 should not be applied if the limitation contains a term that "is used in common parlance or by persons of skill in the pertinent art to designate structure." *Id.* (quoting *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1358. This cannot rebut the presumption.

The following is Go Daddy's entire argument as to why the claims are governed by § 112 ¶ 6: "Although the claims do not recite the term 'means,' considering intrinsic and extrinsic evidence, the claim limitation is so devoid of structure that the drafter must have constructively engaged in means-plus-function claiming." (Def.'s Mem. at 24.) Go Daddy does not explain what "intrinsic and extrinsic evidence" it is considering. Nor does Go Daddy explain what is meant by the drafter "constructively" engaging in means-plus-function claiming.

Use of the term "software" in conjunction with a function does not invoke § 112 ¶ 6. *See Mirror Worlds, LLC v. Apple, Inc.*, 742 F. Supp. 2d 875, 888 (E.D. Tex. 2010) (rejecting application of § 112 ¶ 6 and holding that "even though the structure is identified by its function, it does not decide the issue or result in the term being non-structural. The term 'document organizing facility' is understood by one skilled in the art **to be a software module**."); *Yodlee, Inc. v. CashEdge, Inc.*, 2006 U.S. Dist. LEXIS 48614, at *16-17 (N.D. Cal. July 7, 2006) (rejecting the argument that the term "data gathering system" invoked § 112 ¶ 6, and holding that there was "sufficient structure in [the claim] to establish that the "data gathering system" was ***software***).

Moreover, § 112 ¶ 6 is not to be invoked when the limitation contains a term that "is used in common parlance or by persons of skill in the pertinent art to designate structure." *Flo Healthcare Solutions*, 697 F.3d at 1374. The claims designate structure in the parlance of one of ordinary skill in the art. (SOF ¶ 151.)

Moreover, it is simply untrue that the structure of the patents is limited to a computer. (Def.'s Mem. at 24.) Software "for automatically querying" is further described and identified by the recitation that the query is performed by the "values attributed to each client reminder date field to retrieve a client reminder." (SOF ¶ 29) Indeed, the USPTO specifically stated that a "client reminder with a date field" is "specific structure." (SOF ¶¶ 139-40.) Software "for automatically generating a client response form" is further described and identified by the recitation that the form is generated based on a retrieved client reminder, contains pertinent information contained in the client reminder, and contains options regarding the professional service to be performed. (SOF ¶ 144.) Similarly, software "for automatically transmitting the client

response form" and "automatically receiving the client response form" are further described and identified by the recitation that the client response forms are transmitted and received through an Internet communication link. (SOF ¶ 29.)

Thus, not only is it improper to invoke § 112 ¶ 6, there is nothing to suggest that the claims are indefinite even if they are governed by § 112 ¶ 6.  A patent specification does not have to recite computer code. *Typhoon Touch Techs, Inc. v. Dell, Inc.* 659 F.3d 1376, 1384 (Fed. Cir. 2011). Rather, a "description of the function in words may 'disclose, at least to the satisfaction of one of ordinary skill in the art, enough of an algorithm to provide the necessary structure under *§112, ¶ 6.*'" *Id.* (citing *Finisar Corp. v. DirecTV Grp.,* 523 F.3d 1323, 1340 (Fed. Cir. 2008)). "The amount of detail required to be included in claims depends on the particular invention and the prior art." *Id.* (quoting *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.,* 758 F.2d 613, 624 (Fed. Cir. 1985)). "In turn, the amount of detail that must be included in the specification depends on the subject matter that is described and its role in the invention as a whole, in view of the existing knowledge in the field of the invention." *Id.* Go Daddy does not analyze even a single individual claim element, much less analyze such an element in view of the invention as a whole and the existing knowledge of one skilled in the art. It cannot establish that the claims are means-plus-function claims, when they have never been interpreted as such before. (SOF ¶ 217.)

### C.    The WhitServe Patents Do Not Contain Impermissible "Hybrid Claims"

As its final argument under 35 U.S.C. § 112, Go Daddy contends that Mr. Whitmyer "chose to draft Claims 1, 5, and 9 of the '468 Patent and Claims 1, 4, and 7 of

the '078 Patent in [an] impermissible hybrid manner." (Def.'s Mem. at 26.) This is not true. Nor are these claims impermissible hybrid claims.

A claim is indefinite under section 112, ¶ 2 if it recites both an apparatus and a method of using that apparatus. *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1383 (Fed. Cir. 2005). Such a claim is not sufficiently precise because it is not clear whether infringement occurs through manufacture and sale of the claimed apparatus or the use of that apparatus. *Id.* However, "[w]here the clause at issue is not a separate method step, but rather is descriptive of the apparatus itself, the holding of IPXL is not implicated." *Lamoureux v. AnazaoHealth Corp.*, 669 F. Supp. 2d 227, 263 (D. Conn. 2009) (quotation omitted). In particular, the use of functional language in a claim does not convert an apparatus claim into a method of use or hybrid claim. *Microprocessor Enhancement Corp. v. Tex. Instruments, Inc.*, 520 F.3d 1367, 1375 (Fed. Cir. 2008). "[I]in almost all cases where [the] issue has been raised post-IPXL, the courts have found that the suspect claims did not cover both an apparatus and a method, but rather were apparatus claims containing functional limitations." *Id.* (citing *Ricoh Co. v. Katun Corp.*, 486 F. Supp. 2d 395, 412 (D.N.J. 2007).

Claims 1, 5, and 9 of the '468 Patent and Claims 1, 4, and 7 of the '078 Patent recite "a computer." (SOF ¶ 29.) They also, at various elements, recite "software executing on said computer for automatically . . . ." (SOF ¶ 29.) These "software executing" elements are not method steps. Rather, these elements describe the functional characteristics of the previously recited computer. Software performs the functions; and to perform a function, software must execute.

The claim elements at issue here are unlike the one in *IPXL* which read: "The *system of claim 2* [including an input means] wherein . . . ***the user uses the input means*** to either change the predicted transaction information or accept the displayed transaction type and transaction parameters." 430 F.3d at 1384. The "user uses the input means" phrase does not describe the system. Rather, the "user uses the input means" phrase of *IPXL* describes actions of a user. In the WhitServe Patents, on the other hand, the "software executing on said computer for" language describes characteristics of the claimed apparatus, i.e. the "computer." *See Ricoh Co*, 486 F. Supp. 2d at 402 ("[C]ourts [have] found that claims containing both a physical description of an apparatus and a description of the apparatus' function, e.g., 'communicates,' 'populates' . . . were not impermissible apparatus-method claims. Instead, these claims ***simply use active language to describe the capability of the apparatuses***; they do not claim the activity itself.")

Go Daddy does not set forth any evidence that one of ordinary skill would find the scope of claims 1, 5, and 9 of the '468 Patent and claims 1, 4, and 7 of the '078 Patent insolubly ambiguous. *See Datamize, LLC*, 417 F.3d at 1347.  Go Daddy has not established, as a matter of law, that these claims are indefinite and invalid as hybrid claims.

## V.    THE WHITSERVE PATENTS ARE NOT ANTICIPATED

Go Daddy argues that all of the asserted WhitServe Patent Claims are anticipated under 35 U.S.C. § 102.

Anticipation is a question of fact. *Zenith Elecs. Corp. v. PDI Commun. Sys.*, 522 F.3d 1348, 1356 (Fed. Cir. 2008). "Anticipation requires the presence in a single prior art disclosure of all elements of a claimed invention arranged as in the claim." *Therasense,*

*Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1332 (Fed. Cir. 2010) (quotation omitted). "The requirement that the prior art elements themselves be 'arranged as in the claim' means that claims cannot be 'treated . . . as mere catalogs of separate parts, in disregard of the part-to-part relationships set forth in the claims and that give the claims their meaning.'" *Id.* (quotation omitted). "[U]nless a reference discloses within the four corners of the document not only all of the limitations claimed but also all of the limitations *arranged or combined in the same way as recited in the claim*, it cannot be said to prove prior invention of the thing claimed and, thus, cannot anticipate under 35 U.S.C. § 102." *Id.* (quotation omitted).

"The concept of 'inherent disclosure' does not alter the requirement that all elements must be disclosed in an anticipatory reference in the same way as they are arranged or combined in the claim." *Id.* "'[A]nticipation by inherent disclosure is appropriate only when the reference discloses prior art that must *necessarily* include the unstated limitation . . . .'" *Id.* "'Inherency, however, may not be established by probabilities or possibilities. The mere fact that a certain thing *may* result from a given set of circumstances is not sufficient.'" *Id.* "For a claim to be anticipated, each claim element must be disclosed, either expressly or inherently, in a single prior art reference, and the claimed arrangement or combination of those elements must also be disclosed, either expressly or inherently, in that same prior art reference." *Id.*

## A.     The Foo Article Does Not Anticipate Any Claims of the WhitServe Patents

Go Daddy asserts that an article by S. Foo, entitled "Computational Electronic Mail For Library Applications," ("Foo") anticipates every asserted claim of the WhitServe Patents. (Def.'s Mem. at 28-29.) Foo does not disclose the following information

necessary to anticipate any of the claims: a database containing a plurality of client reminders comprising a date field, the querying of that database by the values attributed to each client reminder date field to retrieve a client reminder, or the automatic generation of a form based on the retrieved client reminder. (SOF ¶¶ 152-161.) Moreover, substantial questions exist surrounding the publication of Foo. It cannot qualify as prior art for the purposes of summary judgment.

      **1.**        **Foo Does Not Disclose All Elements of Each Asserted Claim**

Foo describes a system called "CEmail." (SOF ¶ 221.) Foo discloses two tools that can be utilized to compose an "active mail" within CEmail. (SOF ¶ 222.) First, a user can utilize the "Authoring Tool." (SOF ¶ 222) This "employs the select/paste/move/ paradigm" in which a sender "can use text and attach different media files." (SOF ¶ 223) Composing active mail through the Authoring Tool thus requires the user to manually input all of the contents of that mail.

Foo also discloses a "Template Tool" for composing active mail. (SOF ¶ 222.) The "Template Tool" utilizes templates to facilitate the composition of common and highly repetitive active mail. (SOF ¶ 224.) Foo uses library book renewal reminders as an example for which the Template Tool can be utilized.  (SOF ¶ 225.)

As explained by Foo, the Template Tool utilizes two files: the *template definition file* and the *template usage file*. (SOF ¶ 226.) The *template definition file* defines the basic, non-personalized, content of the template. (SOF ¶ 227.) In the example shown in Foo, this can include the title of the active mail ("Reminders from the Library") and any general instructions to be provided within the active mail ("This is the first overdue notice . . . ."). (SOF ¶ 227.)

The *template usage file*, on the other hand, contains any recipient-specific information to be contained in the active mail. (SOF ¶ 228.) In the example provided by Foo, this can include the name of the overdue book and the date at which it is due. (SOF ¶ 228.) This, as explicitly stated in the example provided in Foo, is "text to be inserted into template." (SOF ¶ 229.) This recipient-specific information is thus not pulled from a database and automatically inserted into the template. It is inserted by a user of the CEmail system.

In short, the "active mail" forms that are so prominent to Go Daddy's argument (Def.'s Mem. at 28-29) are not automatically generated. They are manually composed, regardless of whether the Authoring Tool or the Template Tool is utilized. Nothing in Foo contemplates, much less discloses, the automatic generation of forms based on client reminders stored in a database. (SOF ¶ 161.)

Nor does Foo disclose a database containing client reminders comprising a date field. (SOF ¶ 152-156.) As explicitly stated by the USPTO, this is "a specific structure that must be in the reference in order to be considered under 102." (SOF ¶ 139.)

Foo similarly does not disclose querying any database by values attributed to a date field (SOF ¶ 157-160) or many other elements from the independent and dependent claims of the WhitServe Patents. (SOF ¶ 157-163) Foo does not anticipate any of the WhitServe Patent Claims. (SOF ¶ 164.)

## 2. The Foo Article Cannot be Prior Art for the Purposes of Summary Judgment

The touchstone in determining whether a reference constitutes a printed publication under 35 U.S.C. 102 is "public accessibility." *SRI, Int'l, Inc. v. Internet Sec. Sys.*, 511 F.3d 1186, 1194 (Fed. Cir. 2008).  "A given reference is 'publicly accessible' upon a

satisfactory showing that such document has been disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, can locate it." *Id.*

As discussed in WhitServe's Memorandum in Support of its Motion to Preclude Unsupported Expert Testimony and Untimely Evidence of Invalidity Defenses should not even consider this defense. Substantial questions surround the timing and publication of Foo, and no proper evidence supports it. (Dkt. 211-1 at 8.) The patents claim a priority date of October 7, 1996. (SOF) Go Daddy asserts that Foo was published in March of 1996 in a journal, *Network Information*, published by the Library and Information Technology Association of Singapore. (Def.'s Mem. at 28.)

Go Daddy's assertions regarding the publication of Foo rest entirely on a declaration provided by Dr. Foo himself. Dr. Foo was disclosed as a witness on the last day of discovery. (SOF ¶ 165.) His declaration was provided to WhitServe ten days after the close of discovery. (SOF ¶ 166.) WhitServe has had no opportunity to probe the validity of the assertions contained within the declaration, which should be stricken. Nevertheless, even accepting everything in the Foo declaration as true, there are still substantial questions exist as to whether Foo is prior art.

First, Dr. Foo does not say that the journal was "widely distributed" as asserted by Go Daddy. (SOF ¶ 167.) Dr. Foo only says that it was distributed. (*Id.*) There is nothing in the record regarding the extent of distribution, or how the journal may otherwise have been accessible, in the relevant months: *March of 1996 to October of 1996.* (SOF ¶ 168.) In other words, the journal may have been accessible to members of the public for a fee, but only after October 7, 1996.

Go Daddy has not contended, or provided any evidence to support a conclusion, that prior to October 7, 1996 one of skill in the art could have located Foo using reasonable diligence. Even assuming that Foo was available to the public before October 7, 1996, Go Daddy has presented no evidence that one of ordinary skill in the art would know to locate such a reference in the first-ever volume of a quarterly journal published by the Library and Information Technology Association of Singapore. (SOF) *See In re Bayer*, 568 F.2d 1357, 1362 (C.C.P.A. 1978) (finding that a thesis, deposited in a library but not catalogues or shelved before the critical date, was not a printed publication); *see also In re Cronyn*, 890 F.2d 1158, 1161 (Fed. Cir. 1989) (finding that three student theses, deposited in a library and catalogued only by student name, were not reasonably accessible to the public).

### B.     The Network Solutions "Message Ticketing System" Does Not Anticipate Any Claims of the WhitServe Patents

Go Daddy next contends that certain claims are anticipated by a "Message Ticketing System" ("the MTS") implemented by the company Network Solutions. (Def.'s Mem. 29-33.) This defense also should be stricken because the "evidence" was all produced after the close of discovery. Go Daddy is not permitted to rely on information concerning the MTS. (Dkts. 204, 244, 249.) That issue has been fully briefed. (*Id.*)

### 1.     The MTS Is Not Prior Art

The MTS is not prior art under 35 U.S.C. §102. Go Daddy presents no evidence that the MTS was publicly available. *See Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998) ("[I]n order to invalidate a patent based on prior knowledge or use, that knowledge or use must have been available to the public.") Go Daddy offers only the following assertion: "MTS was available to and used by the public

over the Internet over a year before the WhitServe Patents' priority date of October 7, 1996." (Def.'s Mem. at 30.) This statement does not address how the "back-end" components of the claimed inventions were publicly available in the MTS.

One aspect of the claimed inventions is transmitting a form over the Internet. (SOF ¶ 29.) But that is not the sole aspect of the claimed inventions. (SOF ¶ 29.) The claimed inventions also include "back-end" elements, such as: "a database containing a plurality of client reminders," "software . . . for automatically querying said database by the values attributed to each client reminder date field," and "software for automatically generating a form based on the retrieved client reminder." (SOF ¶ 29.) Even if the MTS contained these elements, there is no explanation of how they could have been publicly accessible. (SOF ¶ 169.) There is no contention that the public could have had any knowledge of the existence of the MTS, much less its functionality (SOF ¶ 169.)

As explained by the Federal Circuit, the public accessibility analysis focuses on the "*claimed* features" of the patent. *Lockwood v. American Airlines, Inc.* 107 F.3d 1565, 1570 (Fed. Cir. 1997). Nothing in Go Daddy's cited case of *Eolas Techs, Inc. v. Microsoft Corp,* 399 F.3d 1325 (Fed. Cir. 2005), contradicts this fact. (Go Daddy Mem. at 30.)  In this instance, there is no evidence that the claimed "back end" features of the WhitServe Patents were publicly accessible in the MTS. Thus, the MTS cannot be invalidating prior art.

### 2. The Evidence Concerning the MTS Is Impermissible Hearsay

In arguing that the MTS anticipated the WhitServe Patent Claims, Go Daddy relies on documents produced by Network Solutions after the close of discovery. (SOF ¶ 178.) These documents are impermissible hearsay and cannot be credited on a motion for summary judgment. *See Bellamy v. General Dynamics Corp.*, 2012 U.S. Dist. LEXIS

76890, at *18 (D. Conn. June 4, 2012) (The Court "may not credit hearsay in evaluating motions for summary judgment.").

The Network Solutions documents are out-of-court statements intended to show the nature of the MTS prior to 1996. *See* Fed. R. Evid. 801. No proper foundation has been laid for these documents as business records. *See* Fed. R. Evid. 803(6). Go Daddy attempts to lay foundation through the declaration of Mr. Ho, but he does not assert that he is the custodian of these documents. (SOF ¶ 170.) *See* Fed. R. Evid. 803(6)(D). Nor is there any other indication that he is otherwise qualified to testify about when these documents were created or how they are kept within the regular course of business of Network Solutions. *See* Fed. R. Evid. 803(6)(B)-(D). In fact, Mr. Ho states that he was hired by Network Solutions in 1998. (SOF ¶ 230.) There is no reason to believe, therefore, that Mr. Ho can testify reliably that all of the Network Solutions documents were created prior to October 7, 1996 and accurately describe a system that existed before October 7, 1996. Additionally, Mr. Ho does not assert, as he must, that the documents were "kept in the course of a regularly conducted business activity, and [] it was the regular practice of that business activity to make the … record." (SOF ¶ 171.)

Moreover, and of no small consequence, the circumstances surrounding Mr. Ho's declaration suggests that the source of the Network Solutions documents lacks the requisite trustworthiness for an exception to the hearsay rule to apply. Fed. R. Civ. P. 803(6)(E).WhitServe sent Network Solutions a notice of infringement. (SOF ¶ 172.). In September of 2012, unbeknownst to WhitServe, Go Daddy began working with Network Solutions. (SOF ¶¶ 172-76.) On November 30, 2012, the last day of discovery, Go Daddy designated Mr. Ho as an untimely witness in this matter. (SOF ¶ 177.) On December 11,

after discovery had closed, Go Daddy produced the Network Solutions documents and the declaration of Mr. Ho. (SOF ¶ 178.)

### 3. The MTS Did Not Contain All Elements of Each Asserted Claim

Apart from the questions surrounding the MTS' accessibility and the fact that all of the documentation concerning the MTS is hearsay, there is no evidence from which to conclude that the MTS contained all elements of even a single claim of the WhitServe Patents. Indeed, Go Daddy's memorandum barely addresses the question of how the MTS supposedly included the elements of the WhitServe Patent Claims.

Go Daddy claims that the MTS would automatically send an email to remind a Network Solutions customer of an expiring domain name registration. (Def.'s Mem. at 31.) But there is nothing whatsoever in this cited email that indicates that this email was sent automatically. (SOF ¶ 538.) Moreover, there is not even an attempt by Go Daddy to connect this email with a "database containing a plurality of client reminders" or "software for automatically querying said database by the values attributed to each client reminder date field,"

There is simply no evidence from which to conclude that the MTS anticipates any of the WhitServe Patent Claims. (SOF ¶¶ 179-193.)

### C. The Chang Article Does Not Anticipate Any Claims of the WhitServe Patents

Go daddy's final argument under 35 U.S.C. § 102 is that an article, *The Transformation and Verification of Office Procedures*, by Shi-Kuo Chang and We-Lung Chan ("Chang") anticipates claims 1-4, 24-27 of the '468 patent, and claims 1, 9-10 of the '078 patent. It does not.

Each independent claim of the WhitServe patents recites: "a database containing a plurality of client reminders comprising a date field having a value attributed thereto." (SOF) Go Daddy contends that the Chang Reference satisfies this element through its disclosure of an "alerter database" containing "time alerter[s]." (See Def.'s Mem. at 33; Ex. DD at 6.) Go Daddy does not explain how "time alerters" are client reminders or how the "alerter database" is supposedly queried.

The "time alerters" in Chang are implemented based on system clock interrupts external to the database system. (SOF ¶ 195.) They are triggered by predefined events. (SOF ¶ 193.) When a database state changes a test is performed to see which alerters are eligible to be triggered. (SOF ¶ 194.) Chang does not disclose any database being queried. (SOF ¶ 198-99.) And "time alerters" are not client reminders comprising a date field. (SOF ¶ 197.) As noted above, a client reminder with a date field is "a specific structure that must be in [a prior art] reference in order to be considered under 102." (SOF ¶ 139.)

Because Chang does not disclose client reminders being retrieved, Chang cannot disclose forms being generated based on retrieved client reminders. (SOF ¶ 197-200.)

Additionally, Chang does not disclose "a communication link between said computer and the Internet." (SOF ¶ 202.) Chang never even mentions the Internet. (SOF ¶ 232.)

Go Daddy contends that Chang is pertinent because it discloses "interactive forms." (Def.'s Mem. at 32.) However, Chang is unclear as to what "interactive forms" actually are. (SOF ¶ 201.) As disclosed in Chang, "interactive forms" are simply forms that call for a reply, as distinguished from "plain forms" that do not call for a reply. (*Id.*).

There is thus no disclosure within Chang that these forms, themselves, can be interacted with.

Chang does not anticipate any of the WhitServe Patent Claims. (SOF ¶ 205.)

**D.      Go Daddy's Claim Charts are Meaningless for the Purposes of Summary Judgment**

Go Daddy attaches claim charts for Foo, Chang, and the Network Solutions MTS which it claims provides "the element-by-element disclosure of the [three references] as compared to the WhitServe Patent' claims." (Def.'s Exs. Y, AA, and DD.) These charts are meaningless for the purposes of summary judgment.

The Foo and Chang charts are solely attorney argument, and attorney argument is not evidence upon which summary judgment of invalidity can be granted. *See Johnston v. IVAC,* 885 F.2d 1574, 1581 (Fed. Cir. 1989) ("Attorney's argument is no substitute for evidence");  *TV Interactive DataCorp v. Sony Corp.*, 2012 U.S. Dist. LEXIS 171526, at *46 (N.D. Cal. Dec. 3, 2012) ("summary exhibits" which were simply compilations of attorney argument prepared for litigation were not evidence that could support summary judgment under 35 U.S.C. § 102).

The Network Solutions chart cites to the untimely declaration of Matthew Ho. Mr. Ho was disclosed as a witness on the last day of discovery. (SOF ¶ 177.) His qualifications are unknown, and there is not even a contention that he is one of ordinary skill in the art. (SOF ¶ 233.) *See In re Spada*, 911 F.2d 705, 708 (Fed. Cir. 1990) (""[T]he [anticipating] reference must describe the applicant's claimed invention sufficiently to have placed a person of ordinary skill in the field of the invention in possession of it."); *Byrne v. Wood, Herron, & Evans LLP*, 450 Fed. App'x 956, 963 (Fed. Cir. 2011) ("The question of

anticipation likewise must be viewed from the perspective of one of ordinary skill in the art.")

None of the statements in any of the chart are set forth as material facts in accordance with Local Rule 56.

Additionally, Go Daddy's chart contains new arguments concerning the prior art references not disclosed in the reports of its expert, Dr. Goldberg (Def.'s Ex. Q), or in response to WhitServe's Interrogatory No. 21 seeking the factual bases for Go Daddy's contentions of invalidity.

The charts are wholly deficient. Nevertheless, WhitServe provides rebuttal charts to affirm the substantive inadequacy of Go Daddy's 102 contentions. (Exs. O – T.)

## VI.   THE WHITSERVE PATENT CLAIMS ARE NOT OBVIOUS

Go Daddy's final argument is that the '468 and '078 Patents are invalid as obvious.

A patent is invalid as obvious "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). Obviousness is a question of law based on underlying factual inquiries. *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1360 (Fed. Cir. 2012). These underlying factual inquiries are: 1) the scope and content of the prior art, 2) the differences between the prior art and the claims at issue, 3) the level of ordinary skill in the art, and 4) any relevant secondary considerations, such as commercial success, long felt but unresolved needs, and the failure of others. *Id*. A party seeking to invalidate a patent on the basis of obviousness must "demonstrate by clear and convincing evidence that a skilled artisan would have

been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *Id.* (quotation omitted.)

Go Daddy's argument as to obviousness suffers the following defects:  1) It fails to address the fact that there is a genuine dispute as to the scope and content of the prior art; 2) It fails to mention that the parties currently dispute the level of ordinary skill in the art; 3) It omits any analysis, whatsoever, of the differences between the prior art and the claims at issue; 4) It omits any discussion, apart from a perfunctory one sentence dismissal, of secondary considerations of nonobviousness; and 5) It provides no evidence to support that a person of ordinary skill in the art would have been motivated to combine any of the cited references. Go Daddy cannot plausibly claim, much less prove, obviousness as an undisputed issue.

### A.      The WhitServe Patents Are Not Obvious In View of Foo, the Network Solutions MTS, or Chang

Go Daddy contends that the WhitServe Patents are obvious in view of Foo, Network Solutions MTS System, and Chang, "either alone or combined." (Def.'s Mem. at 35.) Go Daddy does not event attempt to explain how or why, much less address the relevant underlying factual inquiries. WhitServe has moved to preclude the expert Dr. Goldberg's testimony about obviousness.

First, the scope and content of the prior art is very much in dispute. Go Daddy contends that Foo, the Network Solutions MTS, and Chang are all prior art that anticipates each and every claim of the Whitserve Patents. (Def.'s Mem. at 28-34.) WhitServe, on the other hand, disputes that the Foo Article and the Networks Solutions MTS system are even prior art. WhitServe further disputes Go Daddy's assertion that the

Foo Article, the Networks Solutions MTS System, and the S-K Chang Article each disclose every element of all asserted claims.

Second, Go Daddy does not address the level of ordinary skill in the art in either its memorandum or its Local Rule 56(a)(1) Statement of Facts.

Third, neither Go Daddy nor its expert, Dr. Goldberg, addresses any differences between the prior art and the claims at issue. (SOF ¶ 234.) Go Daddy thus provides no guidance on the issue of obviousness, as opposed to the separate issue of anticipation. Go Daddy merely states that:

> to the extent the Court finds that one or more limitations of the WhitServe Patents claims are not expressly or inherently disclosed by the Foo Article, Network Solutions MTS System, or S-K Chang Article, Dr. Goldberg has opined that one of ordinary skill in the art would have combined one or more of these references in order to arrive at the alleged invention as claimed.

(Def.'s Mem. at 35.) By failing to discuss the elements which are missing, or even *might be* missing, from the individual prior art references, Go Daddy provides absolutely no insight into the issue of obviousness. Go Daddy does not identify which claim elements purportedly disclosed in the various references could be combined together. Go Daddy does not identify which elements, in view of any reference alone would have been obvious to one of ordinary skill in the art.

Fourth, Go Daddy completely ignores secondary considerations of nonobviousness. Go Daddy states that: "due at least to the bounty of well-developed prior art involving automated office procedures, automated renewal reminder emails, and other electronic communications such as web pages, there are no secondary indicia of nonobviousness to undermine Dr. Goldberg's opinion." (Def.'s Mem. at 36.) This statement means nothing. It is a generic, unsupported, assertion about the state of the prior art. Moreover, it completely unclear how this statement's conclusion follows from

its premise; i.e. how the scope and content of the prior art can necessitate the absence secondary indicia of nonobviousness.

Secondary considerations of nonobviousness do exist, and must be considered. *See Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1349 (Fed. Cir. 2012) ("evidence rising out of the so-called 'secondary considerations' must always when present be considered en route to a determination of obviousness"). As explained by Mr. Whitmyer, the invention addressed a long-felt need at the time of the invention by providing a substantially more efficient way of handling reminder services. (SOF ¶ 218.) *See Transocean*, 699 F.3d at 1354 (holding that evidence that invention satisfied long-felt need for greater drilling efficiency supported a finding of nonobviousness). As further explained by Mr. Whitmyer, the patents have been licensed, widely and for considerable sums of money. (SOF ¶ 219.) *See Transocean*, 699 F.3d at 1353. Finally, the invention has achieved considerable commercial success. *See Transocean*, 699 F.3d at 1350. This includes the success of the invention as used by Computer Packages, Inc., who was previously found to infringe the WhitServe Patents. (SOF ¶ 220.)

Finally, Go Daddy provides no reason to combine the teachings of any of the aforementioned references. *See Kinetic Concepts, Inc.*, 688 F.3d at 1366. (Defendant must "proffer evidence indicating why a person of ordinary skill in the art would combine the references to arrive at the claimed invention."). Go Daddy provides only the empty statement that "one of ordinary skill would have been motivated to combine the S-K Chang office automation reference with one or more references disclosing automates transmission of reminders or response forms . . . . because these references share common

software scripts, methods, functionality, and approaches." (Def.'s Mem. at 36.) Go Daddy provides no description of these purportedly common scripts, methods, functionalities, or approaches. Nor does Go Daddy provide any explanation as to how the sharing of such common attributes would lead to a motivation to combine the various references.

The WhitServe Patents are not obvious in view of the Foo Article, the Chang Article, or the MTS, either alone or combined. (SOF ¶ 206.)

### B.    The Perfect Law Automated Legal Docketing System Does Not Render the WhitServe Patents Obvious

Finally, Go Daddy claims that the Perfect Law Automated Legal Docketing System ("Perfect Law software") renders the WhitServe Patents obvious. (Def.'s Mem. at 36-38.) Again, Go Daddy does not say how or why. Go Daddy proffers only a few false conclusions as to the nature of the PerfectLaw software.

Go Daddy states that the PefectLaw software "could merge client data with the stored client reminders to communicate with clients, providing blank forms that its software would automatically populate based on information retrieved from a docket database of client records and due dates." (Def.'s Mem. at 37.) Nothing in Go Daddy's plethora of citations discloses blank forms being populated based on information retrieved from a docket database of client records and due dates. There is no indication in any of Go Daddy's cited materials that the PerfectLaw software, to quote the language of the claims, "automatically generat[ed] a form based on a retrieved client reminder." (SOF ¶ 207, 209.)

Go Daddy further states that "The PerfectLaw software further could receive a reply to the response form from the client and store that information in its database."

(Def.'s Mem. at 37.) But the evidence it cites does not support this assertion. In the cited deposition testimony, the inventor is discussing the functionality of his commercial embodiment of the claimed inventions, Netdocket. The PerfectLaw documentation does disclose client reminders or any interactions with clients of a law firm.

Go Daddy further states that as of 1994, PerfectLaw software was compatible with the Internet, web browsers, and electronic mail programs. (Def.'s Mem. at 37.) This is not true. (SOF ¶¶ 235-36.)

Go Daddy provides a chart comparing the PerfectLaw software to the WhitServe claim elements. Although Go Daddy only contends that the PerfectLaw software renders the WhitServe claims obvious, the chart confusingly asserts that the PerfectLaw software disclosed all elements of every WhitServe Patent claim. More importantly, the chart contains nothing but conclusory statements. The chart cites, for individual elements, to a "Duncan Rough Depo. Tr." that was never produced in this case and six distinct deposition exhibits. It is not supported by the Local Rule 56(a)(1) Statement of Facts. It is so facially deficient, in that it provides absolutely no insight as to the evidence from which Go Daddy is drawing its conclusions, that WhitServe cannot respond to it in any meaningful way.

Simply put, the documentation and testimony associated with PerfectLaw reveals that, apart from a computer and a database, the PerfectLaw documentation does not disclose any of the elements of the WhitServe Patent claims. (SOF ¶ 207.)

Go Daddy does not analyze any of the obviousness criteria as to the PerfectLaw software. *See Kinetic Concepts, Inc.*, 688 F.3d at 1360 (reciting underlying factual

inquiries of obviousness.) There is nothing about the PerfectLaw software that can support a conclusion that the WhitServe Patents are obvious.

The WhitServe Patents are not obvious in view of the PerfectLaw software, either alone or combined with the Foo Article, the Chang Article or the MTS. (SOF ¶ 211.)

## VII.   WHITSERVE HAS PROVIDED ADEQUATE EVIDENCE OF PRIOR CONCEPTION

The issue of conception is predicated on questions of fact. *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1171 (Fed. Cir. 2006). Evidence of conception is evaluated from the standpoint of one of ordinary skill in the art at the time of invention. *See In re Jolley*, 308 F.3d 1317, 1321, 1323 (Fed. Cir. 2002). The trier of fact can conclude for itself, aided by testimony, what the evidence would mean to one skilled in the art. *Mahukar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1577-78 (Fed. Cir. 1996.) While independent evidence is used to corroborate inventor testimony regarding conception, whether or not corroboration exists is also a question of fact. *Medichem*, 437 F.3d at 1170. Further, corroboration need not be contemporaneous with conception. *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1378 (Fed. Cir. 1986). In fact, "circumstantial evidence about the inventive process, alone, may also corroborate." *Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1351 (Fed. Cir. 2001) (citation omitted); *Cooper v. Goldfarb*, 154 F.3d 1321, 1330 (Fed. Cir. 1998).

WhitServe has produced significant amounts of evidence regarding conception, including deposition testimony and corroborating documents. This includes a representative outline of events along with the identification of documents relating to steps Mr. Whitmyer took to build his invention.

The WhitServe Patents claim structure of databases, communication links (networks), and software. As a result, in order to reduce his invention to practice, Mr. Whitmyer needed to first put this infrastructure in place, even while working full-time as an attorney. (SOF ¶ 213.)

Corroborating evidence shows that Mr. Whitmyer had identified the problem he wanted to solve in 1993. During this time, and in addition to his duties as a father and an attorney at the law firm where he worked, Mr. Whitmyer began working part-time as in-house patent counsel for a major corporation. (SOF ¶ 212.) Much of Mr. Whitmyer's time there was spent handling patent annuity documents, which consisted of stacks of tractor feed paper listing patents for which a maintenance/annuity fee was due, together with piles of payment receipts. (SOF ¶ 212.) Mr. Whitmyer recognized the inefficiencies in trying to contact clients and solicit responses authorizing payments for maintenance/annuity fees. (SOF ¶ 212.)

Mr. Whitmyer wanted to address the failings in prior art systems by providing computer-based systems and methods for sending reminders and obtaining client instructions over the Internet. Mr. Whitmyer has testified that he conceived of the invention by 1994, and during this year he had begun to actively reduce it to practice. This included determining how to automate the work of handling patent annuity documents to improve efficiency and reduce time spent handling paper. (SOF ¶ 214.) Evidence corroborates that Mr. Whitmyer coordinated centralized electronic file keeping at the law firm where he worked, including implementing docketing databases and networking the computer system. (SOF ¶ 214.) For example, he negotiated installation of a computer network. (SOF ¶ 214.) He sought to identify useful reports and forms to

assist with making the law office more efficient.  (SOF ¶ 214.)  Mr. Whitmyer also established a committee at in order to identify such "forms" and to write automation software to assemble the forms with data from the database.  (SOF ¶ 214.)  Such forms could be used to remind customers of upcoming deadlines queried from the docketing database.  These activities evidence specific steps Mr. Whitmyer took to reduce his invention to practice, subsequent to conception, by implementing an infrastructure. Documents representative of these activities memorialize this previous conception.  (SOF ¶¶ 212-216.)

In addition, evidence shows that in 1995 Mr. Whitmyer began working with a web design firm on a website design proposal.  (SOF ¶ 215.)  Mr. Whitmyer appreciated that a website could provide a front-end user interface for his invention that clients could access over the Internet.  (SOF ¶ 215.)  Specific website design proposals included a secure client space.  (SOF ¶ 215.)  This way, clients could log in and instruct payment of patent annuities.   (SOF ¶ 215.)   Corroborating evidence also memorializes Mr. Whitmyer's design of website functionality to provide patent expiration and renewal dates, along with renewal fees due.  (SOF ¶ 215.)  Mr. Whitmyer continued working with the forms committee during this time, developing software for adding data such as due dates from databases into documents in order to reduce errors and boost efficiency.  (SOF ¶ 215.)  Mr. Whitmyer also acquired the domain ssjr.com for his law firm.  (SOF ¶ 215.) Through the website and the "backend" infrastructure of networked databases previously established, Mr. Whitmyer sought to implement his invention and provide clients the ability to authorize annuity payments and request email annuity reminders through the website.  (SOF ¶ 215.)

Corroborating documents from 1996 further memorialize the previous conception and attempts to reduce the invention to practice. During this time, Mr. Whitmyer continued to work with web designers to develop a website where clients could, among other things, calculate renewal dates and fees, request annuity and maintenance fee reminders by email, and authorize fee payments. (SOF ¶ 216.) This website design was a specific implementation of one embodiment of his previously-conceived invention. (SOF ¶ 216.)

Accordingly, the record evidences conception of the WhitServe Patents by January 1994. Further, there is significant evidence on the record evidencing steps to implement an embodiment using a web page by 1995. Mr. Whitmyer's testimony on this issue is unambiguous and undisputed. Go Daddy only objects to the sufficiency of the corroborating evidence. The sufficiency of the evidence corroborating conception is a factual dispute which should be tried by the jury.

## VIII.   CONCLUSION

For the foregoing reasons, WhitServe respectfully requests that the Court deny Go Daddy's Motion for Summary Judgment of Invalidity in its entirety.

Dated: January 26, 2013

Respectfully submitted,

/s/ Daniel R. Ferri
Patrick F. Solon
Dean D. Niro
Daniel R. Ferri
NIRO, HALLER & NIRO
181 W. Madison, Suite 4600
Chicago, IL 60602
(312) 236-0733
Fax: (312) 236-3137
Email: DNiro@nshn.com;
solon@nshn.com; DFerri@nshn.com

Walter B. Welsh, CT 27210
Michaud-Kinney Group LLP
101 Centerpoint Drive
Suite 206
Middletown, CT  06451
Tel:   (860) 632-7200
Fax:  (860) 632-8269
Email:  welsh@mkgip.com

Attorneys for WhitServe LLC

## CERTIFICATE OF SERVICE

       This is to certify that a copy of the foregoing **WHITSERVE LLC'S OPPOSITION TO GODADDY.COM, INC.'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY** was served electronically this 26TH day of January, 2013 and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail at the addresses shown below to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

| | |
|---|---|
| Elizabeth J. Stewart (ct01315)<br>Ka Fei Wong<br>Murtha Cullina LLP<br>Whitney Grove Square<br>Two Whitney Avenue<br>4th Floor<br>New Haven, CT  06510<br>Tel:  (203) 772-7700<br>Fax:  (203) 772-7723<br>Email:  stewart@murthalaw.com<br>Email:  kwong@murthalaw.com | Brian W. LaCorte (phv04864)<br>Ballard Spahr LLP (phv04865)<br>1 East Washington Street (phv04866)<br>Suite 2300<br>Phoenix, AZ  85004-2555<br>Tel:  (602) 798-5449<br>Fax:  (602) 798-5595<br>Email:  lacorteb@ballardspahr.com |
| Daniel Nadel (phv05505)<br>Ballard Spahr LLP<br>1735 Market Street<br>51st Floor<br>Philadelphia, PA  19103<br>Tel:  (215) 864-8314<br>Fax: (215) 864-8999<br>Email:  NadelD@ballardspahr.com | Katrina M. Quicker<br>Ballard Spahr LLP<br>999 Peachtree Street<br>Atlanta, GA  30309-5915<br>Tel:  (678) 420-9300<br>Fax: (678) 420-9301<br>Email:  quickerk@ballardspahr.com |

I certify that all parties in this case are represented by counsel who are CM/ECF participants.


       /s/Daniel R. Ferri
       Attorneys for WhitServe LLC