```
 1              UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF CONNECTICUT
 2
                                        Civil Action
 3                                      No. 11-00948-WGY

 4

     * * * * * * * * * * * * * * * * * *
 5                                      *
     WhitServe LLC,                     *
 6                                      *
              Plaintiff,                *
 7                                      *
          v.                            *   MOTION HEARING
 8                                      *
     GoDaddy.com, Inc.,                 *
 9                                      *
              Defendant.                *
10   * * * * * * * * * * * * * * * * * *

11

12

13          BEFORE:  The Honorable William G. Young,
                              District Judge
14

15   APPEARANCES:

16          NIRO, HALLER & NIRO (By Patrick F. Solon,
        Esq. and Daniel R. Ferri, Esq.), 181 W. Madison,
17      Suite 4600, Chicago, Illinois 60602, on behalf of
        the Plaintiff
18
            BALLARD SPAHR, LLP (By Brian W. LaCorte,
19      Esq.), 1 East Washington, Suite 2300, Phoenix,
        Arizona 85004-2555
20           - and -
            BALLARD SPAHR, LLP (By Daniel Nadel, Esq.),
21      1735 Market Street, 51st Floor, Philadelphia,
        Pennsylvania 19103, on behalf of the Defendant
22

23
                                        1 Courthouse Way
24                                      Boston, Massachusetts

25                                      May 2, 2013
```

1          **THE CLERK:** Now hearing Civil Matter 11-948,
2    WhitServe v. GoDaddy.
3          **THE COURT:** Would counsel introduce themselves, I'm
4    sorry.
5          **MR. SOLON:** Your Honor, I'm Patrick Solon.  With me
6    is Dan Ferri.  We're for WhitServe.
7          **MR. LaCORTE:** Good afternoon, your Honor.  Brian
8    LaCorte and Daniel Nadel from Ballard Spahr for GoDaddy, and
9    also Karl Fazio is here as well, in-house counsel for
10   GoDaddy.
11         **THE COURT:** Thank you.
12         Let's start with an evidentiary issue.  On their
13   motion, part of their motion is for invalidity, and I'll get
14   to that.  But part of their motion is noninfringement.  And
15   they have an affidavit that they say supports them on
16   noninfringement, and you say the affidavit's late and the
17   like.
18         Real world, I'm not deciding on the lateness vel
19   non of an affidavit.  But nor am I going to grant them
20   summary judgment of noninfringement on this record if you
21   can tell me that you've got some evidence that counteracts
22   that affidavit.  Just tell me as an officer of the Court.
23         **MR. SOLON:** Sure.  Well, the affidavit of how their
24   call center operators operate something they call CRM, I
25   didn't even know about that until they served an affidavit a

1  week after discovery.  So, I don't have -- about that CRM
2  system, it's never been part of this case.  I don't even
3  know what it is.  So, no, I don't have on that.  However, I
4  have plenty of evidence that's in the record before you as
5  to why they infringe in spite of that argument.
6         **THE COURT:**  I see.  Let me then go to the
7  invalidity here.
8         I'll tell you, their best argument, as I read this,
9  is that this is a means-plus-function patent even though you
10 don't use the word means and that saying software doesn't
11 get it.  And what's so fascinating about this case is,
12 whichever way I jump on this one, whoever loses is going to
13 appeal.  If I, if I declare the patent invalid, I'm saying
14 on the record you've got a very worthwhile appeal about how
15 I read these Federal Circuit opinions.  Contrariwise, if I
16 say this is adequate, we go through whatever we go through,
17 they'll surely appeal invalidity.
18         So that's what I would like to hear argument on.
19 All you've got here is software.  You say you describe it
20 and that gives it some structure, but I'm not so sure that
21 meets the controlling cases.  And I'll hear you.
22         **MR. FERRI:**  Your Honor, if I may address that.
23         **THE COURT:**  Of course.
24         **MR. FERRI:**  When the claim does not use the term
25 means, as you know, the presumption is extremely high.

1   **THE COURT:**  Well, you can't just get around the
2   concept of means-plus-function by not using the term.
3   **MR. FERRI:**  No, you can't.  I think the Federal
4   Circuit said the word mechanism is the same as means.  From
5   this MIT case that plaintiffs cite, excuse me, defendants
6   cite, it's clear that the presumption is extremely high.
7   And they've held that the term circuit when it's only
8   defined by its function is not means-plus-function.  It's
9   structure.
10  **THE COURT:**  Suppose I disagree with you.  Suppose I
11  think it's means-plus-function.  Come to that part.
12  **MR. FERRI:**  Suppose you disagree that the term is
13  means-plus-function?
14  **THE COURT:**  No, suppose I believe that this is a, I
15  rule that this is a means-plus-function patent.  I recognize
16  you argue to the contrary and I recognize that the matter is
17  not at all free from doubt.  I'm just trying to use the oral
18  presentation in a way that most helps me.
19  **MR. FERRI:**  Okay.
20  **THE COURT:**  So wrap your mind around the fact that
21  I reject the first part of the argument, have you adequately
22  described the software?
23  **MR. FERRI:**  Yes, we have, your Honor.
24  **THE COURT:**  How?  How?
25  **MR. FERRI:**  There's -- let me look at the patent,

1   look at the various software steps.
2           **THE COURT:** Please.
3           **MR. FERRI:** The first of which, your Honor, and
4   this is looking at claim 1 of the '468 patent, the software
5   executing the computer for automatically querying the
6   database by the values attributed to each client reminder
7   date field to retrieve a client reminder. That tells, that
8   explains exactly what the software is doing. It's software
9   that queries by values attributed to a client reminder date
10  field. One of ordinary skill in the art as stated on the
11  record would understand that's sufficient, that's sufficient
12  structure for that software.
13          **THE COURT:** And you think that's supported by this
14  Typhoon case.
15          **MR. FERRI:** The Typhoon case says it doesn't have
16  to be code.
17          **THE COURT:** That's correct, it doesn't have to be
18  code. But doesn't it have to be a prose recitation of the
19  operation of the software?
20          **MR. FERRI:** It has to be a recitation that would
21  enable one of ordinary skill in the art to understand it.
22  And there's no evidence on the record that one of ordinary
23  skill in the art who sees this sort of software, the
24  software for generating, software for transmitting over the
25  Internet, and the software for querying, would not

1    completely understand that that's sufficient structure --
2    that that's the structure.
3              **THE COURT:**  Well, let me ask you this practical
4    question.  Assume that while, while I'm troubled by this,
5    it's obvious, I think that as against a motion for summary
6    judgment, where I have to take all intendments against them,
7    we'll all agree that indefiniteness is matter of law.  No
8    dispute as to that.  But suppose I think that the reports of
9    the experts and what I'm told about what a person of
10   ordinary skill in the art would understand is disputed, this
11   is a matter that I must decide, correct?  It's not like
12   obviousness where we give the underlying issues to the jury
13   and they render a verdict and then matter of law reviewable,
14   de novo really by the Federal Circuit, the district judge
15   decides.  This is something I must decide.  It's reviewed,
16   of course, as matter of law, but there isn't -- well, I
17   think I've stated -- is that right?  I have to hold a
18   hearing on it.  If you get by this on indefiniteness, I, the
19   judge, has to hold a hearing on whether or not it's
20   indefinite.  Is that right?
21             **MR. FERRI:**  I'm sorry, I'm kind of missing
22   your point.
23             **THE COURT:**  It was very badly stated.  Suppose you
24   beat summary judgment on indefiniteness, summary judgment.
25   How are we going to decide this legal issue?  Shall I hold a

1  hearing and then decide it one way or another, it is
2  indefinite, it isn't indefinite?
3          **MR. FERRI:**  Mr. Solon, my co-counsel, is --
4          **MR. SOLON:**  Your Honor, if I may?  I have another,
5  I have another similar case where the claim, though,
6  actually said means so, you know, it was means.
7          I think if the issue, if the underlying fact issue
8  between the experts is, for example, what is taught to one
9  of ordinary skill, that's a fact issue.  And that also gets
10 in other defenses they made about enablement and things.
11         **THE COURT:**  Well, I'm not as troubled by that.
12         **MR. SOLON:**  Well, but I have a jury right as to
13 that, I have a jury right as to that defense as well.  So I
14 think as to --
15         **THE COURT:**  And I'm asking on indefiniteness.
16         **MR. SOLON:**  I think I get --
17         **THE COURT:**  You want that for the jury?
18         **MR. SOLON:**  I think I get a jury verdict on that,
19 your Honor.
20         **THE COURT:**  That, that was my question.  Thank you.
21         But it works like obviousness.  You get a jury
22 verdict but then I decide as matter of law?
23         **MR. SOLON:**  You may be right there.
24         **THE COURT:**  Or a judge decides as matter of law --
25         **MR. SOLON:**  Yes.

```
1              THE COURT:  -- given the posture of this case.
2         All right.  I may be back to you, but let's turn to
3    GoDaddy.
4         Don't take any particular comfort --
5              MR. LaCORTE:  I understand.
6              THE COURT:  -- from what I've said so far because
7    the negative pregnant of it is as to everything else at
8    least going in here I see issues.  This one, I think it may
9    all be matter of law.  So, I would just like you to use your
10   time trying to persuade me why it's means-plus-function and
11   under Typhoon this isn't good enough.  And if that's so
12   then, then you win, don't you?  At least as to all the
13   claims that they all do have this software reference.
14             MR. LaCORTE:  They do.  And, your Honor, it is a
15   question of law and it is --
16             THE COURT:  Go ahead.
17             MR. LaCORTE:  -- essentially I would equate it to
18   like Markman or claim construction.  There's clearly the
19   claims language and clearly the claims language says what it
20   says.  And while it does not say means there is a rebuttable
21   presumption and that presumption is rebutted on the face of
22   the patent by, by virtue of referencing software that
23   performs steps.  And clearly here as we briefed even under
24   Typhoon there has to be more than what is provided in either
25   the structure or the written description in the
```

1   specification.  There is no prose as in Typhoon that
2   educates the specific structure.  This, these --
3           **THE COURT:**  Well, he made reference to the
4   functions that it performs.
5           **MR. LaCORTE:**  But, but those are the steps.  So
6   it's software executing to query and to retrieve and to
7   transmit.  But those are the steps.  The how is what's
8   missing.  The how is absent from the specification which
9   squarely presents the legal issue of the means-plus-function
10  indefiniteness.
11          And I differ with Mr. Solon.  I don't believe
12  that's a jury trial issue.  That is an appropriate summary
13  judgment issue.
14          **THE COURT:**  Well, but -- of course that's your
15  position here.  But my question was a little more nuanced
16  than that.
17          One side or the other may be right.  If you are
18  right that on this record there is but one legal answer
19  under, it seems this Aristocrat and Typhoon are the cases to
20  conjure with, I'll have to reflect on that, then fine, you
21  get summary judgment.  The case is over.  They'll appeal,
22  which of course they have every right to do.  I asked a more
23  nuanced question and it was this.
24          Suppose, because this is your motion for summary
25  judgment --

```
1              MR. LaCORTE:  I understand.
2              THE COURT:  -- even though it's a legal issue, I
3    take all intendments against you, as I must, I ring
4    everything I can out of what their expert had to say, and I
5    come to the conclusion that there is a factual dispute as to
6    what a person of ordinary skill in the art would understand,
7    in this context of this technology.
8              How is that factual issue to be resolved?
9              MR. LaCORTE:  I understand.
10             THE COURT:  All right.  That's my question.
11             MR. LaCORTE:  Very well.
12             Well, first of all, certainly there could be an
13   evidentiary hearing of the experts to provide evidence to
14   the Court as to --
15             THE COURT:  You're saying the Court.  I just want
16   to know jury or nonjury.  Do you agree it's a jury issue?
17             MR. LaCORTE:  I don't believe it's a jury issue,
18   your Honor.  Because I don't think you need to resort to
19   expert testimony on what one of ordinary skill to read the
20   face of the specification and the claims language in what is
21   an ordinary, common sense, straightforward technology of a
22   reminder system.
23             THE COURT:  But you see that dances around it.  And
24   I, I agree I'm being difficult here, because you want to win
25   it, and maybe you should on this record.  My concern is if I
```

1    lean all against you and I search around for something
2    factual -- maybe I have described it inappropriately.  If I
3    find some dispute -- I don't find anything on summary
4    judgment.  If I discover some disputed fact which if it were
5    resolved WhitServe's way would render this sufficiently
6    definite, what fact finder decides that?
7              **MR. LaCORTE:**  I think you do, your Honor.  And I'll
8    just put it this way.  You have the arguments presented in
9    summary judgment context.  Their contention of structure is
10   in the specification.  There, there are no disputes as to
11   the fact issues relating to the specification.  The dispute
12   is whether what is spoken in plain English presents
13   structure that would support this means-plus-function
14   language in the claims.  It's absent.  It's like proving a
15   negative.  So, I don't know how you would defer to, you
16   know, all assumptions in favor of the plaintiff when there
17   is the absence of the structure from a plain reading of the
18   specification.
19             **THE COURT:**  I understand.  Conceptually, if the
20   universe of material facts is the patent and the
21   specification --
22             **MR. LaCORTE:**  Yes.
23             **THE COURT:**  -- and all I have to do is interpret
24   it, the second order question is not before us.  And that's
25   your argument.  I match that to Aristocrat/Typhoon -- of

1  course they do, too -- and I say it either meets it or it
2  doesn't meet it.  I was just probing what if I'm not that
3  certain.
4          **MR. LaCORTE:**  Well, I would only, I would only make
5  one further point, your Honor, without overstating it.  The
6  Praxair, Inc. case cited by both parties, even WhitServe on
7  page 11 of its response, clearly holds that indefiniteness,
8  like claim construction, is a question of law.  A patent
9  specification must conclude with one or more claims
10 particularly pointing out and distinctly claiming the
11 subject matter which the applicant regards as his invention
12 that has to have as the cases follow the metes and bounds
13 and the definiteness, and that leads directly into the
14 means-plus-function.
15          And so while you could conceivably resort to
16 hearing from expert witness testimony on the issue of what
17 the specification says and what it means, what is the point
18 of the specification is to explain in a clear and detailed
19 way the structure that supports the steps which is the how
20 to which is missing.
21         **THE COURT:**  I understand.
22         **MR. LaCORTE:**  I've said enough.
23         **THE COURT:**  I do understand.
24         All right, here's, here's the order of the Court.
25 GoDaddy's motion for summary judgment on patent marking,

1   noninfringement and claim, patent marking, noninfringement
2   is denied.  GoDaddy's motion for summary judgment of
3   invalidity is denied save as to the issue of indefiniteness,
4   and as to that issue the matter's taken under advisement.
5           Thank you very much.
6           **MR. FERRI:**  Your Honor, if I may?
7           **THE COURT:**  Briefly.
8           **MR. FERRI:**  You said that all the claims have the
9   software language.  That is not the case.  The method claims
10  do not.
11          **THE COURT:**  Thank you very much.  I'll keep that in
12  mind.
13          That's the order of the Court.
14          **MR. SOLON:**  Thank you, your Honor.
15          **MR. LaCORTE:**  Thank you, your Honor.
16          (Whereupon the matter concluded.)

```
 1                    C E R T I F I C A T E

 2

 3

 4          I, Donald E. Womack, Official Court Reporter for

 5    the United States District Court for the District of

 6    Massachusetts, do hereby certify that the foregoing pages

 7    are a true and accurate transcription of my shorthand notes

 8    taken in the aforementioned matter to the best of my skill

 9    and ability.

10

11

12

13
                /S/ DONALD E. WOMACK  5-20-2013
14              _____
                     DONALD E. WOMACK
15                 Official Court Reporter
                      P.O. Box 51062
16            Boston, Massachusetts 02205-1062
                   womack@megatran.com
17

18

19

20

21

22

23

24

25
```