UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| WHITSERVE LLC, | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| | ) | No. 3:11-cv-00948-WGY |
| v. | ) | |
| | ) | |
| | ) | |
| GODADDY.COM, INC., | ) | |
| Defendant. | ) | |
| | ) | |

YOUNG, D.J.[1]                                         July 20, 2015

### FINDINGS OF FACT AND RULINGS OF LAW
### on the
### LACHES DEFENSE

## I.    INTRODUCTION

The plaintiff, WhitServe LLC ("WhitServe"), commenced suit against the defendant, GoDaddy.com, Inc. ("GoDaddy"), alleging infringement of two of WhitServe's patents: U.S. Patent No. 5,895,468 (the "'468 patent") and U.S. Patent No. 6,182,078 (the "'078 patent") (collectively, the "Reminder Patents").  GoDaddy argues that WhitServe delayed asserting its rights under the Reminder Patents for more than six years after GoDaddy publicly launched a renewals website that openly offered the functionality that WhitServe now accuses of infringement.

---

[1] Of the United States District Court for the District of Massachusetts, visiting judge for pre-trial purposes.  See Order Transfer, Jan. 10, 2013, ECF No. 248.

GoDaddy asserts that WhitServe's delay was unreasonable, inexcusable, and materially prejudicial, and thus that laches should bar WhitServe from collecting damages accrued prior to the filing of the complaint.

On June 14, 2011, WhitServe filed a complaint against GoDaddy for patent infringement in the United States District Court for the District of Connecticut.  Compl., ECF No. 1. GoDaddy answered with affirmative defenses, a jury demand, and counterclaims on August 12, 2011.  Def. GoDaddy.com, Inc.'s Answer, Aff. Defenses, & Countercls. Resp. WhitServe, LLC's Compl., ECF No. 34.  GoDaddy filed an amended answer to the complaint on December 1, 2011 asserting that WhitServe's claims for infringement are barred in whole or in part by the equitable doctrine of laches.  Def. GoDaddy.com, Inc.'s First Am. Answer, Aff. Defenses, & Countercls. Resp. WhitServe, LLC's Compl. 6, ECF No. 87.  On September 2, 2011, WhitServe filed a motion to dismiss GoDaddy's counterclaims and to strike GoDaddy's affirmative defenses.  WhitServe's Mot. Dismiss GoDaddy's Countercls. & Strike Affirm. Defenses, ECF No. 39.  This Court denied WhitServe's motion to dismiss GoDaddy's affirmative defenses on November 17, 2011.  Ruling Re: Pl.'s Mot. Dismiss Countercls. & Strike Affirm. Defenses, ECF No. 84.

On February 27, 2015, WhitServe filed a memorandum regarding the issue of a separate bench trial on prosecution

history estoppel, marking, and laches.  Pl. WhitServe's Mem. Law
Issue Separate Bench Trial ("Bench Trial Mem."), ECF No. 396.
WhitServe argued that laches was no longer a viable defense
under the Patent Act because Petrella v. Metro-Goldwyn-Mayer,
134 S. Ct. 1962 (2014), a recent Supreme Court ruling on laches
under the Copyright Act, conflicts with A.C. Aukerman Co. v.
R.L. Chaides Constr. Co., 960 F.2d 1020 (Fed. Cir. 1992), which
outlined the laches defense in modern patent cases.  Bench Trial
Mem. 6.  Conversely, GoDaddy argued that laches remains a viable
defense under the Patent Act because the Petrella Court's
holding was limited to copyright infringement suits.  GoDaddy's
Resp. Mem. Re: Issue Separate Bench Trial 3, 7-8, ECF No. 400.

In a March 6, 2015 status conference, this Court informed
counsel that a bench trial would proceed on March 17, 2015 as to
GoDaddy's laches defense.  Min. Entry, March 6, 2015, ECF No.
401.  The bench trial began as scheduled on March 17, 2015 and
concluded the following day, at which time this Court took the
matter under advisement.  Min. Entry, March 18, 2015, ECF No.
408.

## II.  FINDINGS OF FACT

### A.  The Patents

The '468 patent, entitled "System Automated Delivery of
Professional Services," was issued to Wesley Whitmyer, Jr.,
founder and manager of WhitServe and patent attorney at St. Onge

3

Steward Johnston & Reens LLC ("SSJR"), on April 20, 1999.  Tr. Vol. I 14:10-16:7, 17:12-19, ECF No. 410.  The '078 patent, entitled "A System for Delivering Professional Services Over the Internet," was issued to Whitmyer on January 30, 2001.  Id. at 17:20-18:7.  The Reminder Patents relate to "a computer and database device that allows a service provider to automate communication with clients about date-sensitive matters, and obtain client instructions, over the Internet."  Joint Final Pretrial Mem. ("Joint Pretrial Mem.") 2, ECF No. 357.

### B.    The Parties

WhitServe owns the Reminder Patents, as well as other patents, and owns companies that run businesses related to the company's patents.  Tr. Vol. I 60:3-8.  One of these companies, NetDocket, provides internet software for payment of patent annuities using the functionalities protected by the Reminder Patents.  Tr. Vol. II 88:7-10, ECF No. 411.

GoDaddy is the world's largest domain name registrar. Joint Pretrial Mem. 2.  WhitServe alleges that GoDaddy uses patented databases to automate renewals of domain name registrations and other services.  Id. at 2-3; Compl. ¶¶ 16, 19-56.  A GoDaddy service called "My Renewals" sends renewal notices to customers over the internet regarding upcoming payment deadlines for the renewal of domain names and services. Compl. ¶ 17.  In addition, a customer can renew GoDaddy products

4

on the My Renewals section of GoDaddy's website. Tr. Vol. II
109:13-20. To access My Renewals, a private GoDaddy page, a
member of the public creates a personal account, including a
username and password, and logs in to GoDaddy's website. See
id. at 83:2-7.

Based on an analysis of GoDaddy's source code, the Court
finds that My Renewals was available to the public by October
2004. Id. at 107:8-25, 134:12-14, 140:12-23; Tr. Vol. III 8:3-
20, ECF No. 412. Michael Micco, a solutions architect at
GoDaddy, became a personal GoDaddy customer in 2004 and recalls
receiving a GoDaddy renewal notice as early as 2007. Tr. Vol.
II 104:25-105:17, 111:10-15.

WhitServe first learned of GoDaddy's potential infringement
of the Reminder Patents when GoDaddy sent a domain name renewal
notice to the personal email address of an SSJR associate,
Michael Kosma, who owned a personal GoDaddy domain name. See
Tr. Vol. I 45:25-46:21; Tr. Vol. II 80:14-82:4; Compl., Ex. 1,
Renewal Notice, ECF No. 1-1. After Kosma showed the renewal
notice to Whitmyer on March 23, 2011, WhitServe "started to
prepare claim charts and draft a complaint almost immediately."
Tr. Vol. II 83:15-19. WhitServe filed suit for patent
infringement approximately three months later. Compl.

The parties do not dispute that WhitServe had no actual
knowledge of GoDaddy's potential infringement prior to March 23,

2011.  Pl.'s Trial Br. Laches ("Pl.'s Trial Br.") 1, 3, ECF No.
402; Tr. Vol. I 10:7-8.  In support of its laches defense,
GoDaddy argues that WhitServe had constructive knowledge of
GoDaddy's infringement as early as 2004, when My Renewals was
publicly available.  GoDaddy's Trial Mem. 7, ECF No. 403
("WhitServe either knew or should have known of GoDaddy's
alleged infringement from 2004-2011.").

### C.   WhitServe's Investigation of Potential Infringement of the Reminder Patents

WhitServe did not investigate or become aware of potential
infringement of the Reminder Patents by GoDaddy or any other
domain name registrar prior to March 23, 2011.  Tr. Vol. I 44:9-
16; Tr. Vol. II 79:6-8.  WhitServe was aware that GoDaddy was a
domain name registrar as early as 2005 but "had no indication
from anything [WhitServe was] aware of" that domain name
registrars might be infringing on the Reminder Patents.  Tr.
Vol. I 50:24-51:16; Tr. Vol. II 85:1-5.

Whitmyer was familiar with domain name registrars as early
as 1996, when SSJR owned a domain name through the domain name
registrar Network Solutions.  Tr. Vol. I 19:13-23:8; see Trial
Ex. 29, SSJR.com Account Records.  WhitServe did not observe any
infringement of the Reminder Patents on the Network Solutions
website in the 1990s or in 2001, when WhitServe renewed the SSJR
domain name for a period of ten years.  Tr. Vol. II 77:20-78:18.

Once WhitServe learned of GoDaddy's possible infringement, WhitServe began investigating other domain name registrars "[b]ecause if GoDaddy infringed, there was some reason to believe that maybe other domain registrars infringed as well." Id. at 84:1-25. After suing GoDaddy, WhitServe sent demand letters to 113 domain name registrars, including Network Solutions, between June 23, 2011 and October 5, 2012. Tr. Vol. I 40:13-22, 70:10-21; Trial Ex. 51, List of WhitServe Demands from June 23, 2011 to October 5, 2012.

Since 2005, WhitServe has investigated numerous potential infringers of the Reminder Patents that were not domain name registrars and brought several patent infringement suits against them. Tr. Vol. I 60:9-17. Prior to filing suit against GoDaddy, all of WhitServe's litigation was in the patent annuity field, a field familiar to Whitmyer because it was "something [he] did as a young lawyer." Tr. Vol. II 90:11-20. WhitServe first pursued litigation for infringement of the Reminder Patents in November 2004 against Computer Patent Annuities, Inc., a company with software for paying patent annuities and trademark renewals. Id. at 89:5-21; Trial Ex. 3, Complaint for Infringement of Patents. In November 2006, WhitServe filed an infringement action against Computer Packages, Inc. ("CPI") for violation of the Reminder Patents by CPI's patent annuity reminder system. Tr. Vol. II 89:22-90:1, 102:9-13; Trial Ex.

7

17, Complaint for Infringement of Patents.  WhitServe also sued Dennemeyer, another company in the patent annuity field, in 2010.  Tr. Vol. II 93:20-94:7; Trial Ex. 10, Complaint for Infringement of Patents.

WhitServe also investigated potential infringement outside the patent annuity field in other areas related to Whitmyer's field of work.  Tr. Vol. II 90:17-20.  As part of Whitmyer's work as a patent attorney and manager of WhitServe, he investigated desktop software that was moving to internet hosting rather than local desktop installation, including calendaring and customer relationship management software.  Id. at 90:20-25.  WhitServe also investigated software related to the healthcare business, such as software used to manage appointments.  Id. at 91:1-7.  Whitmyer became familiar with this type of software after learning about dental practice management software from his father, who was a dentist.  Id.

## III. **RULINGS OF LAW**

### A.   **Legal Framework and Aukerman**

"Unreasonable and inexcusable delay in filing suit to enforce a patent . . . gives rise to the equitable defense of laches." Giese v. Pierce Chem. Co., 29 F. Supp. 2d 33, 38 (D. Mass. 1998) (citing A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1028 (Fed. Cir. 1992)).  A successful laches defense bars recovery of damages accrued prior to filing suit.

Aukerman, 960 F.2d at 1041.  To invoke the laches defense, the defendant must prove by a preponderance of the evidence that "the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant, and [] the delay operated to the prejudice or injury of the defendant."  Id. at 1032.  The availability of the laches defense is committed to the discretion of the trial judge.  Id. at 1028.  As it makes its determination as to whether the laches defense is available, the court must weigh "the length of delay, the seriousness of prejudice, the reasonableness of excuses, and the defendant's conduct or culpability."  Id. at 1034.  The application of the laches defense ought remain flexible, and the court must look to "all of the circumstances of the particular case and the equities involved."  Giese, 29 F. Supp. 2d at 38.

     Under the Patent Act, a plaintiff may not recover for any infringement committed more than six years before the filing of the complaint.  35 U.S.C. § 286.  "Borrowing" this six-year limitation on damages and transposing it to the laches context, courts apply a presumption of laches when a patentee delays filing suit for more than six years after the patentee knew or should have known of the alleged infringer's activity.  See Aukerman, 960 F.2d at 1034-35; see also id. (noting that the two six-year periods are unrelated, as the damages limitation counts

backwards from the filing of the complaint, while the laches time limit counts forward from the time the patentee should have known of the infringement).

If the presumption applies, the burden shifts to the patent holder, who must then present evidence sufficient to allow a reasonable jury to conclude that the delay was reasonable or excusable, or that it was not materially prejudicial. Wanlass v. Gen. Elec. Co., 148 F.3d 1334, 1337 (Fed. Cir. 1998). If the patent holder produces said evidence, the presumption disappears; the issue of laches is thus decided based on the totality of the evidence provided without the aid of any presumption one way or the other. Auckerman, 960 F.2d at 1038.

## B. The Laches Defense Under Patent Act Is Not Barred by Petrella

For more than a century, the Supreme Court has recognized laches as an equitable defense in the patent infringement context. See, e.g., id. at 1028 (citing Lane & Bodley Co. v. Locke, 150 U.S. 193 (1893); Wollensak v. Reiher, 115 U.S. 96 (1885); Mahn v. Harwood, 112 U.S. 354 (1884)).

A recent Supreme Court decision, however, has called that century-old precedent into question. In Petrella v. Metro-Goldwyn-Mayer, Inc., 134 S. Ct. 1962 (2014), the Supreme Court held that defendants cannot invoke laches to bar a claim for damages brought within the Federal Copyright Act's three-year

statute of limitations. Shortly after the Supreme Court's ruling in Petrella, the Federal Circuit considered the impact of Petrella on the laches defense under the Patent Act and held that laches continues to be a valid defense in patent infringement cases. See SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC, 767 F.3d 1339, 1345 (Fed. Cir. 2014) (stating that "Petrella notably left Aukerman intact"). The Federal Circuit later vacated its decision in SCA Hygiene and agreed to review en banc the question of whether Petrella's bar on laches extends to patent infringement. SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC, No. 2013-1564, 2014 WL 7460970, at *1 (Fed. Cir. Dec. 30, 2014); see also SCA Hygiene, 767 F.3d at 1345 (stating that "Aukerman may only be overruled by the Supreme Court or an en banc panel of this court"). Several other district courts have considered the availability of laches under the Patent Act after Petrella, and all have held that Petrella did not overrule Aukerman. See, e.g., Kowalski v. Anova Food, LLC, No. 11-00795 HG-RLP, 2014 WL 8105172, at *14 (D. Haw. Dec. 31, 2014); High Point Sarl v. Sprint Nextel Corp., 67 F. Supp. 3d 1294, 1307 (D. Kan. 2014); Reese v. Sprint Nextel Corp., No. 2:13-CV-03811-ODW, 2014 WL 3724055, at *3 (C.D. Cal. July 24, 2014).

The Supreme Court's decision in Petrella focuses on the Copyright Act's three-year statute of limitations. See 17

U.S.C. 507(b) ("No civil action shall be maintained under the
[Copyright Act] unless it is commenced within three years after
the claim accrued."). Specifically, the Court held that "[t]o
the extent that an infringement suit seeks relief solely for
conduct occurring within the limitations period, . . . courts
are not at liberty to jettison Congress' judgment on the
timeliness of suit." Petrella, 134 S. Ct. at 1967. Congress
imposed a three-year limitations period for copyright suits to
render uniform the time within which suits can be initiated and
to prevent forum shopping invited by disparate state limitations
periods. Id. at 1968-69 (citing S. Rep. No. 85-1014 at 2; H.R.
Rep. No. 84-2419 at 2).

The Supreme Court in Petrella noted that the primary
application of laches - considering its roots in the courts of
equity - is to provide equitable relief when the legislature
created no fixed statute of limitations. Id. at 1973; see id.
at 1974 (describing the role of laches as "gap-filling, not
legislation-overriding"). The Supreme Court determined that the
laches defense is unnecessary under the Copyright Act because
the statute of limitations takes into account delay. Id. at
1973. Accordingly, a plaintiff may delay filing suit long after
an ongoing copyright violation first began - but can only
receive retrospective relief for the three years prior to the
filing of suit. Id. at 1970, 1973.

The Petrella Court directly noted the tension between its
holding under the Copyright Act and the Federal Circuit's
holding in Aukerman regarding the Patent Act, stating that "[w]e
have not had occasion to review the Federal Circuit's position."
Id. at 1974 n.15.  Shedding light on how the logic of its
holding might apply beyond the Copyright Act, the Supreme Court
compared the Copyright Act to the Lanham Act (governing
trademarks), which contains no statute of limitations and
expressly provides for defensive use of equitable principles.
Id.  Then, without further comment, the Petrella Court compared
the Copyright Act and the Patent Act, which limits damages for
infringement to six years prior to the filing of the complaint,
thus leaving open the question of whether laches remains a
viable defense under the Patent Act.  Id.

Looking to the Patent Act, the Act does not contain a
statute of limitations barring suit for infringement, but it
does provide a clear limitation on damages: "[N]o recovery shall
be had for any infringement committed more than six years prior
to the filing of the complaint."  35 U.S.C. § 286.  The Aukerman
court rejected the claim that the damages limitation is
comparable to a statute of limitations, which would preempt a
laches defense.  Aukerman, 960 F.2d at 1030.  The Patent Act's
damages limitation, unlike a statute of limitations, is not a
bar to suit.  See id.; see also Standard Oil Co. v. Nippon

13

Shokubai Kagaku Kogyo Co., Ltd., 754 F.2d 345, 347-48 (Fed. Cir. 1985); Giese, 29 F. Supp. 2d at 38 ("There is no statute of limitations in patent infringement actions, but there is a six-year damage limitation period."). While a statute of limitations "begins to run on some date or other," section 286 of the Patent Act starts from the filing of the complaint and counts backward to determine the date beyond which a patent holder cannot recover damages. Standard Oil Co., 754 F.2d at 348 (internal quotation marks omitted).

The Federal Circuit interprets the statutory defenses to a patent infringement suit provided in 35 U.S.C. § 282, "[n]oninfringment, absence of liability for infringement, or unenforceability," to include "equitable defenses such as laches, estoppel and unclean hands," J.P. Stevens & Co., Inc. v. Lex Tex Ltd., Inc., 747 F.2d 1553, 1561 (Fed. Cir. 1984). The section 286 damages limitation does not preclude a laches defense under section 282. Aukerman, 960 F.2d at 1030 ("Nothing in section 286 suggests that Congress intended by reenactment of this damage limitation to eliminate the long recognized defense of laches or to take away a district court's equitable powers in connection with patent cases."). Rather, Congress intended for laches to complement the section 286 damages limitation. Reese, 2014 WL 3724055, at *3; see also Symbol Techs., Inc. v. Lemelson Med., 277 F.3d 1361, 1366 (Fed. Cir. 2002) ("It is apparent from

14

[commentary of the drafters] that the drafters thought the defense of laches would be available.").

Courts employ equitable doctrines to honor the remedial purpose of statutes without negating the purpose of statutory requirements.  See National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 121 (2002) (affirming the use of equitable doctrines to "honor Title VII's remedial purpose").  A laches defense bolsters the remedial purpose of the Patent Act without negating the purpose of the section 286 damages limitation.  Section 286 is an "arbitrary limitation on the period for which damages may be awarded," Aukerman, 960 F.2d at 1030, and penalizes patent holders who fail to protect their rights in a timely fashion, see Pierce v. Int'l Tel. & Tel. Corp., 147 F. Supp. 934, 937 (D.N.J. 1957).  Laches provides an additional check on patent holders who "sit on [their] rights for an unreasonable period of time."  Adelberg Labs., Inc. v. Miles, Inc., 921 F.2d 1267, 1270 (Fed. Cir. 1990).  Barring a defense for laches effectively would guarantee six years of damages to a plaintiff who successfully proves infringement, regardless of equitable considerations.  Aukerman, 960 F.2d at 1030; see also Lane & Bodley Co., 150 U.S. at 201 (stating that under the Patent Act, courts "will not assist one who has slept on his rights, and shows no excuse for his laches in asserting them"); Allens Creek/Corbetts Glen Pres. Grp., Inc. v. West, 2 F. App'x 162,

164 (2d Cir. 2001) ("[E]quity aids the vigilant, not those who sleep on their rights." (internal quotation marks omitted)).

Though the Petrella ruling brings the availability of laches in the patent context into question, the Supreme Court left Aukerman intact.  Significant differences exist between the Copyright Act's statute of limitations and the Patent Act's limitation on damages, justifying the survival of the century-old laches defense in the patent context after Petrella.

## C.  No Presumption of Laches Arises

If the patent holder delays more than six years after he knew or should have known of infringement, a rebuttable presumption of laches arises.  Giese, 29 F. Supp. 2d at 38.  The presumption establishes the elements of unreasonableness and prejudice but leaves them open to rebuttal by the patent holder. See Aukerman, 960 F.2d at 1037.  A patent holder can "burst" the presumption by producing evidence sufficient to rebut either element.  Id. at 1037-38.  If the patent holder eliminates the presumption, the defendant must prove both elements by "actual evidence."  Id. at 1038.

The period of delay in bringing suit begins when the patent holder "has actual or constructive knowledge of the defendant's potentially infringing activities."  General Elec. Co., 148 F.3d at 1337.  Whether a patent holder has constructive knowledge of infringement is a question of fact.  See Advanced Cardiovascular

Sys., Inc. v. SciMed Life Sys., Inc., 988 F.2d 1157, 1162-63 (Fed. Cir. 1993).  Because it is undisputed that WhitServe did not have actual knowledge of GoDaddy's potential infringement until 2011, WhitServe would need to have constructive knowledge by June 14, 2005 for the presumption to apply.  Tr. Vol. III 46:18-21, 49:6-9.

Laches does not bar relief for a patent holder whose ignorance of infringement is justified, but ignorance does not protect a patent holder who should be aware of infringement in "appropriate circumstances."  General Elec. Co., 148 F.3d at 1338.  Patent holders have a duty to police their rights and must "be diligent and make such inquiry and investigation as circumstances reasonably suggest."  Potash Co. of Am. v. Int'l Minerals & Chem. Corp., 213 F.2d 153, 155 (10th Cir. 1954); see also General Elec. Co., 148 F.3d at 1338 (citing Potash). Specifically, a patent holder has a duty to investigate "pervasive, open, and notorious activities that a reasonable patentee would suspect were infringing."  General Elec. Co., 148 F.3d at 1338 (internal quotation marks omitted).  Open and notorious activities include "sales, marketing, publication, or public use of a product similar to or embodying technology similar to the patented invention."  Id.  In addition, a patent holder has a duty to "keep[] abreast of the activities of those in his field of endeavor."  Id. at 1339.

Looking first to whether GoDaddy's alleged infringement was "open and notorious," WhitServe argues that it was not open and notorious because GoDaddy required a user to create a username and password to access the My Renewals portion of their website. Pl.'s Trial Br. 5.  At trial, WhitServe described GoDaddy's infringement as being behind a "locked door."  Tr. Vol. II 138:11-17.  GoDaddy, on the other hand, claims the company has openly and publicly described how the My Renewals page works since at least 2004, including thorough descriptions on the publicly available "Help" or "FAQ" pages.  Tr. Vol. III 21:15-22:13.  Unfortunately, the record is devoid of any evidence of what GoDaddy's public "Help" or "FAQ" pages said concerning My Renewals on or before June 14, 2005 because GoDaddy does not keep archived web shots of prior web pages.  See Tr. Vol. II 120:5-7.  GoDaddy claims that its Customer Care Call Center was also publicly available during this time to answer customer questions regarding the renewal of GoDaddy products.  Tr. Vol. III 21:15-22.

Infringement is open and notorious, thus creating a duty to investigate a product, "when publicly available information about it should have led [the patent holder] to suspect that product of infringing."  Wanlass v. Fedders Corp., 145 F.3d 1461, 1466 (Fed. Cir. 1998).  The fact that a product is available to the public is not enough to make the infringement

18

open and notorious, unless the public information would lead a
patent holder to suspect infringement.  See id.; see also TQP
Dev., LLC v. Intuit Inc., No. 2:12-CV-180-WCB, 2014 WL 2809841,
at *10 (E.D. Tex. June 20, 2014) ("The mere fact that the
accused websites were publicly available does not by itself
establish as a matter of law that a reasonable patentee would
have known that [defendant] might be infringing."); AccuScan,
Inc. v. Xerox Corp., No. 96 CIV. 2579 (HB), 1998 WL 273074, at
*5 n.7 (S.D.N.Y. May 27, 1998) ("The mere fact that the 7020
facsimile machine was on the market does not indicate that
AccuScan knew or should have known of the infringement of that
time.").

       On the other hand, evidence that a product was publicly
advertised or promoted to the trade suggests that a patent
holder should have been aware of potential infringement by that
product.  See Hall v. Aqua Queen Mfg., Inc., 93 F.3d 1548, 1553
(Fed. Cir. 1996) (ruling infringement open and notorious when
infringing product was advertised heavily in trade magazines and
at trade shows); Pearson v. Central Ill. Light Co., 210 F.2d
352, 356 (7th Cir. 1954) (ruling constructive knowledge where
defendant published a product brochure, which it distributed to
the trade).  Advertisement of a product to the public will not
trigger a duty to investigate unless the advertisement would
suggest infringement to a reasonable patent holder.  Fedders,

145 F.3d at 1465 (ruling no constructive knowledge when "the advertisements relied upon by Fedders were not shown to have described the [infringing component] of Wanlass's invention").

WhitServe does not dispute knowing that GoDaddy was a domain name registrar, nor does it dispute that GoDaddy was a "well-known brand in the industry." Id. WhitServe argues, however, that GoDaddy's infringement on the My Renewals page was not open and notorious because it was behind a "locked door." See Tr. Vol. II 138:11-17. In an age when customers are required to create a username and password for nearly every online exchange, however, WhitServe's claim that the username and password requirement constituted a "locked door" falls flat. See Corey Ciocchetti, Just Click Submit: The Collection, Dissemination, and Tagging of Personally Identifying Information, 10 Vand. J. Ent. & Tech. L. 553, 561 (2008) ("[T]he vast majority of . . . online transactions require individuals to disclose specific pieces of [personally identifying information] in order to complete a sale or gain access to a service.") Courts have required patent holders to do far more than create a username and password to police their patent rights. See, e.g., General Elec. Co., 148 F.3d at 1339-40 (affirming laches defense where patent holder failed periodically to test General Electric products, more than 800 of

which contained run capacitor motors, in order to police
infringement of single-phase run capacitor motor patent).

Yet, even though Mr. Whitmyer, like any member of the
public, could easily have created a login on GoDaddy's public
website, looked at GoDaddy's "Help" or "FAQ" pages, or called
GoDaddy's Customer Call Center, there is no evidence that My
Renewals was sufficiently open or notorious such that WhitServe
should have been on notice of potential infringement. Even
assuming that My Renewals was available to the public starting
in late 2004, there is no evidence that it was marketed in a way
that suggested that WhitServe should have investigated GoDaddy
for potential infringement. Indeed, GoDaddy began "broad
advertising" in 2005 to "generate awareness" about the website.
Tr. Vol. III 10:11-18. As a result of this broad advertising,
GoDaddy became one of the most visited websites in the mid-
2000s. Id. at 10:19-11:9. But there is no evidence that
GoDaddy's "broad advertising" referenced or even alluded to My
Renewals, nor did GoDaddy publish a press release, product
description, or product launch announcement about My Renewals.
Tr. Vol. II 133:20-134:2. Although GoDaddy, the world's largest
domain name registrar, was undisputedly well-known in the
internet and e-commerce industry by or before June 14, 2005,
nothing about GoDaddy's "open and notorious" internet presence

21

suggests that a reasonable patent holder would suspect GoDaddy's activities infringed the Reminder Patents.

Looking next to whether domain name registrars were within WhitServe's industry, WhitServe argues that the company's "field of endeavor" was patent annuity management and that it diligently searched for infringement of the Reminder Patents in that industry.  Tr. Vol. III 50:9-13.  GoDaddy argues that, based on WhitServe's pattern of infringement investigation, WhitServe's field of endeavor extends beyond patent annuities to the field of intellectual property management.  Even more broadly, GoDaddy argues that WhitServe's duty extended to all professional service providers because the Reminder Patents apply to devices that "automatically deliver professional services."

A reasonable patent holder, interested in recovering for infringement, will police "the activities of those in his field of endeavor."  General Elec. Co., 148 F.3d at 1339.  Determining whether a patent holder is within an infringer's industry is a fact-intensive analysis.  See, e.g., Fedders, 145 F.3d at 1464-65 (ruling single-phase motor patent holder who did not attend conventions or trade shows or receive trade journals was not in air conditioning industry); Magnetar Techs. Corp. v. Six Flags Theme Parks Inc., No. 07-127-LPS-MPT, 2014 WL 533425, at *9 (D. Del. Feb. 7, 2014) (finding that manufacturers of airport

baggage handling equipment were not in amusement park ride industry); Reese, 2014 WL 1872175 at *4 (finding caller ID system patent holder who previously sued members of the cellular wireless industry was within the telecommunications field); Crown Packaging Tech., Inc. v. Rexam Beverage Can Co., 679 F. Supp. 2d 512, 522 (D. Del. 2010) (finding patent holder and infringer to be competitors in the limited industry of can manufacturing).

Though Whitmyer had considerable experience in the software and internet-related service fields, he was not required to police every possible online infringer in every conceivable field. See Reese, 2014 WL 1872175 at *5 (C.D. Cal. May 9, 2014) (stating that the patent holder "not have a duty to police the entire . . . industry by testing any and all questionable products"). A patent holder is only "chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry." Advanced Cardiovascular Sys., 988 F.2d at 1162 (quoting Johnston v. Standard Mining Co., 148 U.S. 360, 370 (1893)) (internal quotation marks omitted).

The first indication of WhitServe's "field of endeavor" is WhitServe's own business activity. WhitServe does not have any employees. Tr. Vol. I 59:23-60:1. WhitServe's primary activity

23

is the ownership of patents and companies that run businesses related to its patents. Id. at 60:3-8. NetDocket, a company owned by WhitServe, uses internet software for payment of patent annuities and for trademark renewal using the functionalities protected by the Reminder Patents. Tr. Vol. II 88:7-10. WhitServe's business activity is consistent with GoDaddy's claim that WhitServe is involved in the intellectual property management industry.

The next indication of WhitServe's industry is the company's history of infringement investigation and litigation related to the Reminder Patents. Whitmyer's inventive activity, and WhitServe's subsequent investigation of potential infringers, was guided by Whitmyer's own work experience. Id. at 87:10-13, 90:11-20. When Whitmyer filed the Reminder Patents, he was working as in-house patent counsel for a division of Union Carbide, where it was his role to manage documents related to patent annuities, also known as patent maintenance fees. Id. at 86:12-22. Based on his later experience managing SSJR, Whitmyer became interested in software for managing professional businesses, including software for contact management, calendaring, and online office applications. Id. at 87:16-88:1. Whitmyer also followed leads to possible infringement based on public information suggesting infringement, as well as information from his own practice as a

lawyer, his father's dental practice, and articles in the Wall Street Journal.  Id. at 91:17-24.  Generally, WhitServe focused infringement investigation "on fields where [WhitServe] had information that was publicly available that suggested there might be an infringement."  Id. at 92:6-9.

WhitServe's pattern of sending demand letters and, in some cases, filing suit for infringement is consistent with Whitmyer's work experience.  Prior to this suit against GoDaddy, all of WhitServe's litigation enforcing the reminder patents was in the patent annuity field.  Id. at 90:11-13.  The majority of demand letters sent by WhitServe prior to 2011 were in the intellectual property management industry, including patent annuity software and trademark renewal software.  See e.g., Trial Ex. 17 (complaint asserting infringement by products and services, including "CPi On Line," patent annuity software and "EARS" trademark renewal management software); Trial Ex. 4-6, 34 (correspondence regarding infringement by DIAMS-XE, IP management software, and by Dennemeyer's On Demand Annuity Portal); Trial Ex. 12 (correspondence with Ladas & Parry LLP regarding infringement by "Ladas Exchange," intellectual property portfolio software).

WhitServe also sent demand letters to several major players in the technology industry, including Google, Microsoft, and IBM, with which Whitmyer was familiar through his work at SSJR.

See Trial Ex. 20 (correspondence regarding infringement by Google Docs and Google Gears); Trial Ex. 23 (correspondence regarding infringement by Microsoft Office Live); Trial Ex. 24 (correspondence with IBM regarding infringement by various products, including LotusLive service).

The language of the demand letters further supports GoDaddy's argument that WhitServe's industry is intellectual property management. Demand letters that WhitServe sent to various technology companies indicate that it was aware that infringement of the Reminder Patents was occurring in the intellectual property management industry more broadly than just with respect to patent annuities. See, e.g., Trial Ex. 19, Demand letter to FTF Technologies ("WhitServe's technology has been widely adopted by the IP management industry."). Language in other demand letters suggests that WhitServe recognized the application of the Reminder Patent technology beyond the intellectual property management industry. See, e.g., Trial Ex. 21, Demand letter to Salesforce.com (""Many other businesses in the computer/information services industry have not only recognized the importance of this technology, but also the validity of WhitServe's intellectual property protection.").

Even assuming that WhitServe participates in the intellectual property management industry, however, WhitServe does not have an automatic duty to police the whole industry.

WhitServe has constructive notice of possible infringement by domain name registrars only if its participation in the intellectual property management industry would cause a reasonable patent holder to suspect infringement.  See Advanced Cardiovascular Sys., 988 F.2d at 1162.  WhitServe was aware that domain names, like patents and trademarks, are important forms of intellectual property and could be managed by intellectual property management software.  Tr. Vol. I 53:17-24, 54:23-55:21. There is no evidence, however, that WhitServe's own intellectual property management company, NetDocket, or the intellectual property management companies investigated or sued by WhitServe prior to 2011 engaged in management of domain names.

In addition, before suing GoDaddy, Whitmyer's invention and business activity did not intersect with the field of domain name registration.  Tr. Vol. II 88:2-5.  Whitmyer was familiar with domain name registrar Network Solutions from his management of SSJR but observed no infringement during renewal of the SSJR domain name.  Id. at 77:20-78:18.

GoDaddy's claim that WhitServe had a duty to investigate all internet professional service providers fails.  Though WhitServe's own industry is a narrow category of professional service providers – providers of intellectual property management – a patent holder may be charged with knowledge of infringement in industries outside the patent holder's own

industry in which its patent has applications.  Comcast Cable
Commc'ns Corp. v. Finisar Corp., No. C06-04206 WHA, 2008 WL
170672, at *5 (N.D. Cal. Jan. 17, 2008).  The law does not,
however, impose a duty to investigate any possible product that
may infringe a patent because such a duty would be overly
burdensome and impractical.  See Fedders, 145 F.3d at 1465
("Imposing a duty . . . to monitor the air-conditioning industry
by periodically testing all others' products . . . would be
unreasonable").  WhitServe's duty is limited to investigation of
products that a reasonable patent holder would suspect to be
infringing.

There is no evidence that WhitServe was "negligently or
willfully oblivious" to infringing activities, General Elec.
Co., 148 F.3d at 1338, nor that WhitServe was "sleeping" on the
reminder patents.  WhitServe was not aware of facts that would
have led a reasonable patent holder to believe that GoDaddy was
infringing the Reminder Patents by or before June 14, 2005, less
than a year after GoDaddy alleges that My Renewals website
launched.  Therefore, no presumption of laches arises.

**D.   WhitServe Had No Constructive Knowledge of
      Infringement Before March 23, 2011 and WhitServe Did
      Not Delay in Filing its Suit Three Months Later**

Without the benefit of the presumption of unreasonableness,
GoDaddy has the burden of proving that WhitServe's delay was
unreasonable and inexcusable after the time WhitServe knew or

should have known of its claim against GoDaddy and that GoDaddy suffered economic or evidentiary prejudice.  See Aukerman, 960 F.2d at 1032, 1037-38.

The parties do not dispute that WhitServe had no actual knowledge of infringement before March 23, 2011.  Nor is there any evidence that WhitServe had constructive knowledge of GoDaddy's infringement prior to that date.  WhitServe filed suit three months after actually learning of GoDaddy's potential infringement.  Moreover, there is no evidence that GoDaddy suffered economic or evidentiary prejudice during WhitServe's three-month delay in filing suit.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds that WhitServe did not have constructive knowledge of GoDaddy's alleged infringement before March 23, 2011.  WhitServe expediently filed its complaint three months after learning about My Renewals. Accordingly, GoDaddy's laches defense fails and WhitServe is not precluded from recovering alleged damages prior to the filing of the complaint on June 14, 2011.

**SO ORDERED.**

William S. Young
WILLIAM G. YOUNG
DISTRICT JUDGE

29